OPINION
Defendant-appellant, Jeffrey A. Turco, was convicted in the Butler County Court of Common Pleas for involuntary manslaughter (in violation of R.C. 2903.04[B]), street racing, operating a motor vehicle without reasonable control, and speeding in excess of fifty m.p.h. We affirm appellant's convictions and decline to address the state's cross-appeal.
This case involved an automobile accident in which a white Taurus driven by appellant collided with a red Mustang driven by co-defendant, Kraig L. Kehl. On April 5, 1997 at 2:25 in the morning, police officer Donald Overpeck responded to a radio dispatch about an automobile accident with injuries on Route 4 in Fairfield, Ohio. When the officer arrived at the scene, he saw a body lying on the ground next to some steel posts and two people standing beside a Taurus SHO, which was on the roadway facing the wrong direction. Officer Overpeck walked over to the seemingly lifeless body, checked for a pulse and signs of breathing, and found neither.
The two people standing nearby identified themselves as appellant and Kevin Hobbs. Appellant told the officer that there had been an accident, during which his back seat passenger, John Roberts, had been thrown from the car. Appellant explained that he had been driving Hobbs and Roberts in his white Taurus when a red Mustang GT hit them from behind, causing a crash. The Mustang drove away immediately after the collision. Appellant and Hobbs were questioned only briefly before paramedics took them to the hospital. Paramedics detected alcohol on appellant's breath. A test revealed that appellant's blood alcohol level was .09 percent.
Later that day, co-defendant Kehl and Joseph White heard about the accident and went to the police department. In a written statement, Kehl said that he was driving and White was a passenger in a red Mustang in the early hours of the morning on Route 4. According to his statement, Kehl thought he had fallen asleep, and then the car had hydroplaned on the wet road. Kehl's car came to a stop and stalled; he looked around and saw nothing. Kehl started the car and drove White to his home in Fairfield. When White's passenger door would not open as usual, Kehl checked his car and noticed damage to the headlights. Kehl claimed that he had no idea what he had hit. An examination of Kehl's Mustang showed signs of a collision with appellant's vehicle.
Appellant and Kehl were jointly indicted on charges of involuntary manslaughter and three underlying misdemeanors. Appellant was also charged with driving while under the influence of alcohol. On June 6, 1997 appellant filed a motion for separation of the trial of the two co-defendants. The trial court denied appellant's motion.
At trial, appellant and Kehl stipulated to the fact that Roberts' death was a direct proximate result of the automobile collision. Hobbs, White, and appellant testified as to who was responsible for causing the crash. Kehl did not testify.
Kevin Hobbs, who was the front seat passenger in appellant's Taurus at the time of the accident, testified that they had left Brewske's bar and were traveling in the left lane on the highway when a red Mustang pulled up alongside them and the driver "floor[ed] it." According to Hobbs, appellant "floored" his car too, throwing Hobbs back in the seat. Hobbs thought that the cars were traveling at a speed of sixty to seventy m.p.h. Then the Mustang struck the passenger side of appellant's Taurus, causing it to spin out of control. Hobbs landed on the ground and saw his friend Roberts wrapped around a pole in front of a Savage Auto Parts store.
White, who was a passenger in Kehl's Mustang at the time of the accident, also testified. White stated that on the night of the accident, Kehl was driving White from Brewske's bar. Kehl was driving his red Mustang down a single southbound lane behind a white Taurus, which was moving slowly. After the cars drove under an overpass, the single lane opened up into two lanes and Kehl tried to pass the Taurus. Kehl "popped" the clutch and his car "kicked out" (i.e., the back of Kehl's Mustang slid to the right, towards the curb). Then the driver of the Taurus revved his car's engine and someone leaned out of the passenger window, waving Kehl on. White leaned out of his window and waved back, and the two cars revved their engines at each other. Then White felt a jolt and their car slid sideways, starting to spin. White stated that he did not know which of the two cars crossed the centerline first. When White asked Kehl what had happened, Kehl said something about hydroplaning and started driving away. At that point, White spotted the Taurus up against a telephone pole. White, in a state of shock, said nothing to Kehl. White admitted on the stand that he had lied in a written statement to police, in which he stated that he had been asleep during the accident and had not seen what had happened.
At trial, appellant testified that a red Mustang drove right up to his rear bumper and the driver started revving its motor. When the road split in two lanes, the Mustang pulled up alongside of him, so close that appellant thought he was going to be hit. Appellant testified that he applied the brakes to try to encourage the car to pass him, but the Mustang slowed down, too. Then the Mustang got behind appellant's Taurus and alternated lanes. Appellant traveled through several intersections and accelerated, trying to get in front of the Mustang. Appellant testified that he feared for his life and hoped that when they passed the police station ahead, the Mustang would back off. Appellant stated that immediately before the collision, the Mustang was to appellant's right and to the rear. At the point of impact, appellant's Taurus kicked out to the left, and began to spin. The car struck a telephone pole on the side of the road, and appellant briefly blacked out.
Three eyewitnesses to the accident testified as to what they saw. Susan Bishop, a clerk at an Amoco gas station, testified that the cars were travelling at a speed of at least fifty m.p.h.; she thought she saw the red Mustang swerve and tap the white Taurus. The Taurus collided with a telephone pole, and Bishop called 911. Tracy Neal, who was delivering newspapers at the time of the accident, testified that the two cars were "definitely racing," speeding at sixty-five to seventy-five m.p.h. Finally Carl Glenn, who had been working at the Dairy Mart store, testified. He stated that the cars were both "goosin' their motors," and that they "kicked it down" or "punched it" and accelerated. Glenn said that the cars were "flying" at a speed of about one hundred m.p.h., side by side, when there was a "banging." Glenn testified that he lost sight of the vehicles for a second or so but saw the red Mustang spin out of control and stop. Then Glenn heard the Mustang "rev" its motor and saw it leave the scene.
Three accident re-constructionists presented multiple theories as to how the accident occurred. Two of the expert witnesses agreed that the cars were traveling well above fifty m.p.h. (The other expert witness did not testify about the speed of the vehicles.) The state's expert witness testified that, in his opinion, both cars swerved toward the center line at the same time, which caused the crash. The expert witness hired by Kehl stated that he thought that appellant caused the collision by losing control of his vehicle or making an abrupt turn. The expert witness who was called by appellant testified that he believed that Kehl's Mustang struck appellant's Taurus in the right rear, which caused the vehicle to spin out of control.
At the close of the evidence, appellant's counsel asked the trial court to give the jury an instruction on the defense of necessity. The trial court refused this request. However, the trial court granted appellant's request to instruct the jury on vehicular homicide as a lesser included offense of involuntary manslaughter. The state objected, claiming that vehicular homicide was not a lesser included offense of involuntary manslaughter. The trial court overruled the state's objection.
The jury found both appellant and Kehl guilty of involuntary manslaughter, street racing, operating a motor vehicle without reasonable control, and speeding in excess of fifty m.p.h. The jury found that appellant was not guilty of driving while under the influence of alcohol. Appellant filed a timely appeal, and the state of Ohio filed a cross-appeal. Appellant raises three assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR A SEPARATE TRIAL FROM HIS CODEFENDANT, KRAIG L. KEHL, PURSUANT TO RULE 14 OF THE OHIO RULES OF CRIMINAL PROCEDURE.
Under his first assignment of error, appellant asserts that the trial court erred in denying appellant's motion for a separate trial. The law favors joinder of defendants and avoidance of multiple trials. Joinder increases judicial efficiency, alleviates inconvenience to witnesses, and reduces the possibility of incongruous results in successive trials before different juries. State v. Thomas (1980), 61 Ohio St.2d 223, 225.
Crim.R. 14 provides as follows:
 If it appears that a defendant * * * is prejudiced by a joinder * * * of defendants in an indictment * * * the court shall * * * grant a severance of defendants, or provide such other relief as justice requires.
When co-defendants are charged by the same indictment, R.C.2945.13 applies, which provides as follows:
 When two or more persons are jointly indicted for a felony, except a capital offense, they shall be tried jointly unless the court, for good cause shown on application therefor by the prosecuting attorney or one or more of said defendants, orders one or more of said defendants to be tried separately.
When defendants are jointly indicted for a felony that is not a capital offense, the burden rests upon the applicant seeking a separate trial to show good cause why a separate trial should be granted. State v. Perod (1968), 15 Ohio App.2d 115, paragraph one of the syllabus; State v. Brooks (June 4, 1987), Montgomery App. No. 9190, unreported. The decision to grant or refuse a co-defendant's request for separate trials rests within the discretion of the trial court. Perod at paragraph one of the syllabus. Absent a showing of an abuse of discretion and prejudice to the co-defendant, the trial court's decision to deny a request for separate trials shall not be overturned. State v.Daniels (1993), 92 Ohio App.3d 473, 484-485, citing State v.Torres (1981), 66 Ohio St.2d 340; Perod at paragraph three of the syllabus.
In this case, co-defendants appellant and Kehl were charged by the same indictment. At trial, appellant and Kehl stipulated to the fact that Roberts' death was a direct proximate result of the automobile collision. Appellant argues that severance was required in this case because the co-defendants presented antagonistic defenses, whereby each co-defendant attempted to exculpate himself and inculpate the other co-defendant.
The circumstances of this case are similar to the facts inZafiro v. U.S. (1993), 506 U.S. 534, 113 S.Ct. 933. In that case, each co-defendant claimed to be innocent and accused the other of the crime. The government argued that all co-defendants were guilty and offered sufficient evidence as to all co-defendants, and the jury found that all co-defendants were guilty of multiple offenses. Id. at 540. In Zafiro, the United States Supreme Court affirmed the district court's decision to deny the co-defendants' request for separate trials and held that antagonistic defenses are not prejudicial per se. Id. at 538.
Because the facts and trial strategies of the case sub judice
are very similar to those found in Zafiro, we are inclined to follow the court's holding in that case. Moreover, nothing in the record indicates that the trial court's decision to allow appellant and Kehl to be tried together was an abuse of discretion. Therefore, we find that the trial court's decision to deny appellant's motion for separate trials was not error. The first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED IN DENYING APPELLANT'S REQUEST FOR JURY INSTRUCTIONS WITH RESPECT TO A NECESSITY DEFENSE.
Under his second assignment of error, appellant claims that the trial court erred when it refused to instruct the jury on the defense of necessity. A trial court must give the jury all instructions that are relevant and necessary for the jury to weigh the evidence and fulfill its duty as the fact finder. State v.Comen (1990), 50 Ohio St.3d 206, 210. A trial court may refuse to give an instruction that is not applicable to the evidence presented or is an incorrect statement of law. State v. Cross
(1979), 58 Ohio St.2d 482, 488. An appellate court reviewing a trial court's refusal to give a requested jury charge based upon the evidence at trial shall not reverse the decision of the trial court unless an abuse of discretion is shown. State v. Bishop
(Oct. 5, 1998), Madison App. No. CA97-07-032, unreported, citingState v. Endicott (1994), 99 Ohio App.3d 688, 693.
Appellant requested that a jury instruction on the necessity defense be provided to the jury. The common law defense of necessity contains the following elements:
 (1) the harm must be committed under the pressure of physical or natural force, rather than human force;
 (2) the harm sought to be avoided is greater than or at least equal to that sort to be prevented by the law defining the offense charged;
 (3) the actor reasonably believes at the moment that his act is necessary and is designed to avoid the greater harm;
 (4) the actor must be without fault in bringing about the situation; and
 (5) the harm threatened must be imminent, leaving no alternative by which to avoid the greater harm.
29 Ohio Jurisprudence 3d (1994) 233, Criminal Law, Section 3012.
On appeal, appellant argues that this instruction was justified by appellant's testimony. Appellant testified that Kehl was driving in such a manner that appellant feared for his life. Appellant testified that he had nowhere to drive off of the road safely, so he tried to stay ahead of Kehl's Mustang until he arrived at the police station, hoping that the Mustang would then slow down. However, on cross-examination appellant admitted that he had the opportunity to avoid the pursuit by turning off an intersecting street.
When appellant asked the trial court to give the jury an instruction on the necessity defense, counsel failed to submit a written instruction. In fact, appellant's counsel admitted that he had not completed the research necessary to determine whether this instruction was applicable to the case. Apparently, the trial court found that appellant failed to meet burden of going forward with evidence sufficient to raise the defense of necessity. See Cross, 58 Ohio St.2d at 321-322. Under these circumstances, the trial court's decision to deny appellant's request for this jury instruction was not an abuse of discretion.
Moreover, we believe that the nature of the instructions that the court gave to the jury did, in effect, instruct on this issue. Appellant was convicted of involuntary manslaughter in violation of R.C. 2903.04(B), which states:
 No person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a misdemeanor of the first, second, third, or fourth degree or a minor misdemeanor.
The jury also found appellant guilty of three underlying misdemeanors: street racing, operating a motor vehicle without reasonable control, and speeding in excess of fifty m.p.h.
R.C. 4511.251 defines the offense of street racing as follows:
 The operation of two or more vehicles from a point side by side at accelerating speeds in a competitive attempt to out-distance each other or the operation of one or more vehicles over a common selected course, from the same point to the same point, wherein timing is made of the participating vehicles involving competitive accelerations or speeds. * * * The operation of two or more vehicles side by side either at speeds in excess of prima-facie lawful speeds established by divisions (B)(1)(a) to (B)(7) of section 4511.21 of the Revised Code or rapidly accelerating from a common starting point to a speed in excess of such prima-facie lawful speeds shall be prima-facie evidence of street racing.
R.C. 4511.202 defines the offense of operating a motor vehicle without reasonable control as follows:
 No person shall operate a motor vehicle * * * on any street, highway, or property open to the public for vehicular traffic without being in reasonable control of the vehicle * * *.
Speeding is defined, in pertinent part, as the following:
 No person shall operate a motor vehicle * * * at a speed greater or less than is reasonable or proper, having due regard to the traffic, surface, and width of the street or highway and any other conditions, and no person shall drive any motor vehicle * * * in and upon any street or highway at a greater speed than will permit the person to bring it to a stop within the assured clear distance ahead.
R.C 4511.21(A).
The verdict shows that the jury found appellant and Kehl guilty of street racing, operating a vehicle without reasonable control and speeding over fifty m.p.h. Therefore, the jury found appellant and Kehl had participated in a competitive attempt to outdistance each other, had failed to maintain reasonable control, and sped in excess of fifty m.p.h. The jury's verdict shows that they believe appellant acted out of guilty intent. The fact that the jury convicted appellant of these three misdemeanors in addition to involuntary manslaughter illustrates that the jury did not believe that appellant was forced to drive as he did because he feared for his life and had no other choice. Implicit in the jury's verdict is the rejection of the scenario appellant's counsel suggested might possibly justify a necessity defense.
Finding no error in the trial court's decision, we overrule appellant's second assignment of error.
Assignment of Error No. 3:
 THE CONVICTION FOR INVOLUNTARY MANSLAUGHTER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Under his third assignment of error, appellant claims that the jury verdict was against the manifest weight of the evidence. To determine whether a verdict is against the manifest weight of the evidence, an appellate court must do the following:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting Statev. Martin (1983), 20 Ohio App.3d 172, 175. When reviewing a claim that a verdict is against the manifest weight of the evidence, an appellate court must keep in mind that the jury was in the best position to judge the credibility of the witnesses and the weight to be given to the evidence. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The court of appeals must unanimously disagree with the jury's resolution of conflicting testimony in order to reverse a conviction based on a finding that the verdict is against the weight of the evidence.State v. Thompkins (1997), 78 Ohio St.3d 380, 389.
Appellant argues that the evidence presented about the automobile accident was so confusing that it was impossible for the jury to come to any conclusion as to the cause of the accident. During the trial of this case, the jury was bombarded by multiple theories of how the automobile accident occurred. Three expert witnesses provided different explanations as to how they believed the accident happened. The testimony of the three eyewitnesses differed in some ways.[1] Appellant's counsel also impeached White's testimony at trial by showing that White had lied to the police in his initial statement. Therefore, appellant argues, the jury's decision was against the manifest weight of the evidence.
Despite the fact that several different re-constructions of the accident were presented at trial, we cannot say that the jury clearly lost its way and created a miscarriage of justice so that appellant's conviction should be overturned. At trial, appellant and Kehl stipulated that Roberts' death was a direct proximate cause of the automobile accident. Therefore, to obtain a manslaughter conviction the state had to show that appellant was responsible in part for causing the accident and had committed one of the underlying misdemeanors charged. We find that the record contains sufficient evidence to support appellant's involuntary manslaughter conviction. There was sufficient evidence that three misdemeanors were committed. Despite confusing testimony and some arguments to the contrary, there was sufficient evidence to show that appellant was responsible in part for causing the accident in which Roberts was killed. Such evidence justifies the jury's guilty verdict for involuntary manslaughter. The jury was not obligated to accept appellant's explanation of events. Therefore, appellant's final assignment of error is overruled.
State's Cross-Appeal
The state of Ohio has filed a cross-appeal, asserting that it was error for the trial court to instruct the jury on vehicular homicide as a lesser included offense of involuntary manslaughter. R.C. 2945.67 provides that the state may appeal such a trial court decision by leave of the appellate court. We decline to address the state's cross-appeal in this case, where our decision would be advisory in nature.
Judgment affirmed.
[1] One witness said that he believed the cars' top speeds reached at least one hundred m.p.h.; other witnesses estimated speeds of only fifty to sixty-five m.p.h. Although the eyewitnesses agreed that one of the vehicles spun around and out of control, they did not agree about which lane each car was traveling in and which vehicle was driving erratically.