The State of Ohio, Appellee, v. Cross, Appellant.

(No. 78-1539—Decided June 27, 1979.)

484

*Mr. Edward G. Sustersio,* prosecuting attorney, for appellee.

*Mr. John G. Paleudis,* for appellant.

WILLIAM B. BROWN, J. Appellant raises two issues in this appeal. He argues that the jury should have been instructed concerning the common-law defense of necessity as set forth in *People* v. *Lovercamp*[4] (1974), 43 Cal. App. 3d 823, 118 Cal. Rptr. 110, and that the phrase "[i]n the case of any other detention," found in R. C. 2921.34(B), is so vague, arbitrary and unreasonable as to be an unconstitutional denial of due process under the 14th Amendment to the United States Constitution.

## I.

We must first decide whether the affirmative defense of necessity or duress is precluded because of the language of the escape statute, R. C. 2921.34, and then decide whether the evidence presented is sufficient as a matter of law to establish such a defense.[5]

In attempting to determine whether R. C. 2921.34(B) prohibits raising the affirmative defense of necessity or duress, we find *State* v. *Procter, supra,* to be helpful. In *Procter,* Judge Stephenson stated, at page 158:

"* * * The evident purpose of this section is to negate such decisions as *State* v. *Ferguson* (1955), 100 Ohio App. 191, which holds, in substance, that a prisoner has a right to escape if his confinement is unlawful. In precluding irregularities in bringing about or maintaining detention or

---

[4] See footnote no. 3.

[5] Normally, it is not our function to weigh the sufficiency of evidence, but an affirmative defense is a question of law and at the time of trial of this case, the defendant was required, pursuant to R. C. 2901.05(A) and the interpretation of that statute, to meet the burden of going forward with evidence of a nature and quality sufficient to raise the defense. *State* v. *Robinson* (1976), 47 Ohio St. 2d 103; *State* v. *Chase* (1978), 55 Ohio St. 2d 237; *State* v. *Abner* (1978), 55 Ohio St. 2d 251. If a defendant should fail to meet this burden, then, as a matter of law, the court can not allow a jury instruction concerning the defense. The issue will be removed from jury consideration. See *State* v. *Millett* (Me. 1971), 273 A. 2d 504, 508; *State* v. *Robinson, supra,* at pages 112-113; *State* v. *Toth* (1977), 52 Ohio St. 2d 206, 212; *State* v. *Melchior* (1978), 56 Ohio St. 2d 15, 20; and *State* v. *Abner, supra,* at pages 253-254.

lack of jurisdiction as a defense, the General Assembly intended that such matters were to be remedied by means other than self help through escape. We do not perceive, either expressly or by implication, a legislative intent therein to statutorily negate a duress defense."

We agree with these perceptions and add that the language of R. C. 2921.34(B) specifically refers to two particular defenses, i. e., irregularity in bringing about or maintaining detention or lack of jurisdiction of the detaining authority, but it does not disallow the common-law affirmative defense of necessity or duress.

In making this determination, we are involved in a balancing process. Appellant contends that intolerable, deplorable, unsanitary prison conditions provide justification for a prison escape. Yet in order to prevent mass self-help releases, we must strike a balance between the interests of society and the interests of the defendant. We agree with the reasoning set forth in *Lovercamp, supra,* at page 827, where the court stated:

"In a humane society some attention must be given to the individual dilemma. In doing so the court must use extreme caution lest the overriding interest of the public be overlooked. The question that must be resolved involves looking to all the choices available to the defendant and then determining whether the act of escape was the only viable and reasonable choice available. By doing so, both the public's interest and the individual's interest may adequately be protected. In our ultimate conclusion it will be seen that we have adopted a position which gives reasonable consideration to both interests. While we conclude that under certain circumstances a defense of necessity may be proven by the defendant, at the same time we place rigid limitations on the viability of the defense in order to insure that the rights and interests of society will not be impinged upon. * * *"

The restrictions and conditions we would place upon a defense of necessity or duress are adequately set forth in defendant's proposed jury instruction[*]. Applying the

---

[*]See footnote no. 3, *supra.*

rules set forth therein to the proffered evidence and viewing the evidence most favorably to the appellant, we find no specific threat of death, forcible sexual attack or substantial bodily impairment in the defendant's immediate future. At most, the evidence reveals that appellant complained of a common cold, and that in the past when he needed medical attention, he was taken to the Martins Ferry hospital for treatment.

We are not faced with a situation where an inmate may be forced to flee a burning prison to save his life (1 Hale's Pleas of the Crown 611 [1778]); or a situation where an inmate must choose between death, beating or homosexual advances (*Lovercamp, supra*). The evidence reveals that the conditions were not desirable, and that there was no substantial health impairment. We concur with other courts which have held that undesirable prison conditions are not sufficient to justify an escape or make one necessary. *State* v. *Worley* (1975), 265 S. C. 551, 220 S. E. 2d 242, 243, and cases cited in Annotation 69 A. L. R. 3d 678, 689 *et seq.*

One of the essential features of a necessity or duress defense is the sense of present, imminent, immediate and impending death, or serious bodily injury. See *State* v. *Sappienza* (1911), 84 Ohio St. 63; *State* v. *Milam* (1959), 108 Ohio App. 254; *State* v. *Procter, supra*, at page 158. There is no such evidence in the present cause, for the defendant simply had a cold, saw an opening and escaped. A common cold is hardly a substantial health impairment that affected his health in an imminent way.

Neither do we find that he made any complaints to the authorities about the alleged heat and water conditions. Appellant argues that complaining would have been futile because no action had been taken even after the grand jury reports concerning prison conditions had been issued. In any event, the reports referred to lack of thermostatic temperature control and did not mention any significant lack of water.

Moreover, there was ample time and the means available to resort to the legal system. Escape was not the only

viable and reasonable choice available. Appellant had access to the courts through R. C. 2921.44 and 2921.45. In addition, appellant complained that he was without counsel, and he knew nothing about the aggravated arson charge. The evidence shows that he made several phone calls during his incarceration. He was not denied access to the phone If he wanted a lawyer, he could have called one or had a friend or relative do it.

The *coup de grace* is the fact that appellant failed to turn himself in immediately after fleeing the supposed intolerable conditions. This makes it very clear what the defendant's intentions were and that he purposely escaped to flee the system and for no other reason. He fled to Mexico and only after three weeks did he turn himself in to California authorities. If an affirmative defense can be raised to an escape charge, this is certainly not the case to raise it. Here, appellant saw a chance to escape and did so, and he only turned himself in because he realized he had "done wrong" and wanted to "get this mess straightened up." As a matter of law, we find that the defendant failed to produce evidence of a nature and quality sufficient to raise his defense.

We reemphasize the position taken in *Lovercamp, supra,* concerning reporting to the proper authorities. It must be understood that the defense of necessity or duress is strictly and extremely limited in application and will probably be effective in very rare occasions. It is a defense and not a conjured afterthought. All the conditions must be met, and the court must find as a matter of law that the evidence is sufficient to warrant an instruction on the affirmative defense of necessity or duress. The court may refuse to give an instruction which is not applicable to the evidence governing the case, or which is incorrect. *Callahan* v. *State* (1871), 21 Ohio St. 306; 15A Ohio Jurisprudence 2d 550, Criminal Practice and Procedure, Section 460.

II.

Appellant contends that the phrase "[i]n the case of any other detention," is unconstitutionally vague, ambigu-

ous and arbitrary in violation of the Due Process Clause of the 14th Amendment. Appellant argued below, and before this court, that he was unable to conceive of "other detention" besides confinement pursuant to a judicial order or in a detention facility. The Court of Appeals stated that "other detention" meant an effected arrest and placement in a police wagon, etc. Appellant's position appears to be that he can not think of a situation where a person may be confined other than in a detention facility or pursuant to a judicial order, which would not simply be a violation of the resisting arrest statute. The offenses of escape and resisting arrest are separate and distinct. Arrest is a criminal process and has been adequately defined in *State* v. *Barker* (1978), 53 Ohio St. 2d 135. Until the arrest is effected one who resists is guilty of R. C. 2921.33, but after that time he would be in "custody," detained" or "confined." If he should break the detention, he would be guilty of violating R. C. 2921.34. The meaning of detention is not vague, neither is it unreasonable or arbitrary to impose different penalties for the two different crimes, as appellant asserts.

A simple reading of R. C. 2921.34 leads us to the conclusion that it is not vague, arbitrary or unreasonable. The wording is specific, precisely written and understandable to a person of ordinary intelligence. It is sufficiently clear and unambiguous in defining the prohibited activity. The standards of guilt are ascertainable by men of ordinary intelligence, and they need not guess at their meaning or differ as to their application. See *Connally* v. *General Construction Co.* (1926), 269 U. S. 385, 391.

Furthermore, appellant's discussion of resisting arrest and R. C. 2921.34(B) is irrelevant to the issue presented to this court. The defendant was incarcerated in a detention facility, the Belmont County jail, so the only applicable portion of R. C. 2921.34 is division (A). Appellant contends that the state failed to prove the regularity of defendant's detention. We think that it was enough to show that the defendant was confined in a detention facility.

490

For the reasons mentioned in part I, *supra*, we agree with the Court of Appeals' result but affirm for differing reasons. As stated in part II, we affirm the Court of Appeals concerning the constitutionality of R. C. 2921.34.

*Judgment affirmed.*

CELEBREZZE, C. J., HERBERT, P. BROWN, SWEENEY, LOCHER and HOLMES, JJ., concur.