OPINION
Antonio Elijah appeals his conviction in the Montgomery County Court of Common Pleas for the offense of failure to comply with the order or signal of a police officer, a violation of R.C.2921.331.
In the early morning hours of June 11, 1999, Officer Elworth was dispatched to Denlinger's Garage in Dayton, Ohio on a burglar alarm call. When he arrived on the scene, Officer Elworth observed broken glass from the doors at Denlinger's Garage. A crowd of people shouted to Officer Elworth that a vehicle had been broken into and a cell phone stolen. The crowd also indicated that the perpetrator was the Appellant, who had been sitting with a friend in a car parked behind Denlinger's Garage. Officer Elworth then noticed Appellant beginning to leave the scene and he told Appellant to stop. The appellant, however, testified he did not see nor hear the officer signal to him before he drove away.
Officer Elworth testified that he then got into his cruiser, activated his lights and siren, and followed Appellant's car. During the five-minute low speed chase, Officer Elworth observed Appellant speeding and failing to stop for stop signs or traffic signals. Appellant, on the other hand, testified he slowed down as he traveled over speed bumps and as he came to stop signs and stop signals. At one point, Appellant drove through a yard where a gate blocked the road and hit a parked car. Appellant continued on, with Officer Elworth and other police officers in pursuit, until he came to his aunt and uncle's residence.
Appellant's car became wedged between the bushes and detached garage on his aunt and uncle's property. The police cruisers arrived and blocked Appellant's vehicle from behind. Some of the officers then approached Appellant's vehicle and observed Appellant attempting to put the car in reverse. Fearing for the safety of the police officers standing behind Appellant's car, Officer Elworth pulled Appellant out of the car's side window. According to the testimony of Officer Elworth and other police officers, Appellant continued to struggle once he was out of the car. They then handcuffed Appellant and arrested him for failure to comply with the signal of a police officer.
Appellant's version of the chase is different. Appellant testified he did not realize several police cruisers were following him and signaling him to stop until midway through the chase. At that moment, Appellant "freaked" and flash backed to fifteen (15) years ago when he was severely beaten by Dayton police officers. Appellant feared he would be beaten again and wanted to find a safe haven from the police. According to his testimony, Appellant decided he would find a safe haven at his aunt and uncle's house. Appellant also refuted the testimony that he was still struggling to get away from the police once he arrived at his aunt and uncle's house. Appellant testified that when the police officers came over to his car once he was at the house, he was attempting to put the car in park, not reverse.
On July 7, 1999, Appellant was indicted on one count of failure to comply with the order or signal of a police officer, in violation of R.C. 2921.331 (B) ("No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring his motor vehicle to a stop.") A jury trial was held on September 13 and 14, 1999. At trial, Appellant attempted to argue he was under duress when he disobeyed the police officers' orders because he feared he would be beaten by the Dayton police officers again. He offered Detective Kenneth Lakin as a witness in support of his argument. Appellant claimed that the Internal Affairs Bureau of the Dayton Police Department had conducted an investigation into the beating fifteen years ago, but Appellant was unable to produce any written documentation of the investigation. Detective Lakin, representing Internal Affairs, was prepared to testify that in accordance with the policies and procedures of the Internal Affairs Bureau, if a record of the investigation had existed it would have been purged from the records system by this time. The trial court ruled that Detective Lakin's testimony was irrelevant to the issue of whether Appellant was guilty or not guilty of failing to comply with a police officer's signal as "Lakin had no actual knowledge of the facts of the alleged failure to comply with the lawful order of a police officer." As a result, Detective Lakin never testified in front of the jury.
The trial court also denied Appellant's request to instruct the jury on the affirmative defense of duress. The trial court determined that there was no imminent or immediate threat of serious bodily injury to Appellant when he failed to comply with the police officers' orders; an alleged beating at the hands of Dayton police officers fifteen (15) years ago was too far remote in time to be relevant to the issue of imminent threat of harm.
On September 14, 1999, the jury returned a verdict of guilty on the charge of failing to comply with a police officer's orders. On September 30, the trial court sentenced Appellant to twelve (12) months of confinement in the Corrections Reception Center and suspended Appellant's driving privileges in the State of Ohio for thirty (30) days. This timely appeal followed.
Appellant raises four assignments of error:
 I. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND VIOLATED THE DEFENDANT'S DUE PROCESS RIGHTS IN ACCORDANCE WITH THE U.S. CONSTITUTION, FOURTEENTH AMENDMENT, IN ACCEPTING A JURY FINDING OF GUILTY AS SAID FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, THE STATE FAILED TO PROVE ITS CASE BEYOND A REASONABLE DOUBT, AND THE EVIDENCE WAS LEGALLY INSUFFICIENT TO SUPPORT THE JURY VERDICT.
 II. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN DENYING THE DEFENDANT THE OPPORTUNITY TO CALL DETECTIVE LAKIN TO TESTIFY REGARDING THE ABSENCE OF RECORDS TO SUPPORT DEFENDANT'S ALLEGATION OF
A PRIOR BEATING BY THE DAYTON POLICE.
 III. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN DENYING DEFENDANT'S REQUEST FOR A JURY INSTRUCTION ON THE AFFIRMATIVE DEFENSE OF DURESS.
 IV. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN GIVING THE OHIO JURY INSTRUCTION OF "WILLFULLY"
 AS SAID DEFINITION WAS MISLEADING TO THE JURY UNDER THE CIRCUMSTANCES OF THIS CASE.
 I.
The sufficiency of the evidence and the weight of the evidence are two different legal standards. See State v.Thompkins (1997), 78 Ohio St.3d 380, 386. The sufficiency of the evidence standard is applied to determine whether the case should have been allowed to go the jury or whether the evidence is legally sufficient to sustain the jury's verdict. Thompkins,supra at 386; State v. Jackson (Feb. 13, 1998), Mont. App. No. 16495, unreported at *4. Under the sufficiency of the evidence standard, a reviewing appellate court is to consider the evidence in the light most favorable to the prosecution and ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See State v. Jenks (1991),61 Ohio St.3d 259, 263; State v. Brickles (Sept. 3, 1999), Mont. App. No. 17526, unreported at *6.
An appellate court's review of the manifest weight of the evidence is a much broader inquiry. Brickles, supra at *6. Under the manifest weight of the evidence standard, the appellate court "sits as a thirteenth juror" and agrees or disagrees with the jury's resolution of conflicting evidence. Thompkins, supra at 387; Jackson, supra at *5. In doing so, the appellate court "review[s] the entire record, weighs the evidence and all reasonable inferences, and considers the credibility of witnesses." Jackson, supra, at *5 quoting State v. Martin (1983),20 Ohio App.3d 172,175. The reviewing court should show deference to the fact-finder's resolution of the conflicting evidence and reverse only in extraordinary cases. Brickles, supra
at *7.
We hold that the jury in this case could have found the prosecution proved beyond a reasonable doubt every essential element of the crime of failure to comply with a police officer's signal and that the jury could have resolved the conflicting evidence in favor of the prosecution. Officer Elworth testified that Appellant drove away after he yelled at Appellant to stop. He further testified Appellant failed to stop for his cruiser's lights and sirens during the chase. Other officers testified that Appellant was trying to put his car in reverse when it became wedged between the bushes and the detached garage on his aunt and uncle's property. Detective Deborah Ritchey, who interviewed Appellant after his arrest, testified that Appellant admitted he had failed to comply with the police officer's signals. Appellant, on the other hand, testified he failed to stop for the police officer because he feared he would be beaten as he allegedly had been beaten by the Dayton police in the past. He also testified he had put the car in park when he arrived at his aunt and uncle's residence. There is enough evidence by which a rational jury could find beyond a reasonable doubt that Appellant committed the crime of failing to comply with the signal of a police officer. Furthermore, the jury could have found the testimony of the prosecution's witnesses, the Dayton police officers, more credible than the testimony of Appellant. Accordingly, Appellant's first assignment of error is overruled.
 II.
The admissibility of evidence rests within the sound discretion of the trial court. Rigby v. Lake County (1991),58 Ohio St.3d 269, 271. "An appellate court which reviews the trial court's admission or exclusion of evidence must limit its review to whether the lower court abused its discretion." Id. A trial court abuses its discretion when it acts unreasonably, arbitrarily, or unconscionably. Id.
Relevant evidence is defined by Evid.R. 401 as evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." In the case sub judice, the trial court ruled that Detective Lakin's proposed testimony about the Internal Affair Bureau's policy of purging its records after four (4) years was irrelevant to the determinative issue in the case: whether Appellant was guilty or not guilty of failing to comply with a police officer's order or signal. Appellant argues that Detective Lakin's testimony was necessary to show why Appellant could not present any evidence, beyond his own testimony, to substantiate his claim of a prior beating by Dayton police officers and so was relevant to the issue of duress.
We agree with Appellant. The jury did hear testimony from Appellant describing the beating. The jury may have doubted Appellant's story without any written evidence to support it. Detective Lakin's testimony would have explained to the jury why no such written evidence existed to corroborate his testimony. His testimony would have made it more probable Appellant was telling the truth about the beating. Detective Lakin's proposed testimony is therefore relevant to Appellant's duress defense and should have been admitted. Therefore, Appellant's second of assignment of error is sustained.
 III.
Duress is an affirmative defense to a criminal charge. Statev. Stiles (June 12, 1998) Mont. App. No. 16588, unreported at *1. A defendant is said to be under duress when he is compelled to commit a crime by another under threat of imminent death or serious bodily injury. State v. Getsy (1998), 84 Ohio St.3d 180,1999; Stiles, supra at *1. The force compelling the defendant "must remain constant, controlling the will of the unwilling [defendant] during the entire time he commits the act, and must be of such a nature that the [defendant] cannot safely withdraw."Getsy, supra at 1999. The defendant must subjectively believe he is being threatened with imminent death or serious bodily injury if he does not commit the crime. Talmadge v. Robinson
(1952), 159 Ohio St. 333, 340. The defendant's subjective belief that he in danger of imminent death or grave bodily injury must be objectively reasonable based upon the evidence presented. Stiles,supra at *1 citing State v. Harkness (1991), 75 Ohio App.3d 7, 11.
It is within the trial court's sound discretion to determine whether the evidence presented at trial is sufficient to require a particular jury instruction. State v. Mitts (1998), 81 Ohio St.3d 223,228. An appellate court can reverse a trial court's refusal to give a defendant's requested instruction only upon a showing of abuse of discretion by the trial court. State v.Midwest Pride IV Inc. (1998), 131 Ohio App.3d 1, 15.
Before the trial court instructs the jury on the defense of duress, it must find as a matter of law that evidence presented is sufficient to warrant an instruction on duress. State v. Cross
(1979), 58 Ohio St.2d 482, 488. Evidence is sufficient where a reasonable doubt of guilt has arisen based upon the claim of duress. Getsy, supra at 198. If the evidence generates only a mere speculation or possible doubt, such evidence is insufficient to raise the affirmative defense. Id. at 198-199.
We find that there was enough evidence presented in the present case to warrant a jury instruction on the defense of duress. Appellant testified that once he realized the police cruisers were following him, he had an "immediate" flashback to the time fifteen years before when he was severely beaten by Dayton police officers. He described the beating, how he was hit with a billy club and punched to the point where he became numb and he was taken to the hospital. He further testified that he was not trying to flee from the police when he drove to his aunt and uncle's house but rather that he wanted to find a safe place because he feared he would be beaten by the police officers again. He explained that he stopped the car when he arrived at his aunt and uncle's house because only then did he feel safe against the threat he believed the Dayton police officers posed.
Based upon Appellant's testimony and the proposed testimony of Detective Lakin, which the jury should have been allowed to hear, we conclude Appellant's claim that he believed that he was being threatened with imminent serious bodily injury unless and until he reached a safe haven could create a reasonable doubt of guilt in the minds of the jurors. The trial court abused its discretion in refusing to instruct the jury on the defense of duress. Appellant's third assignment of error is sustained.
 IV.
In the case sub judice, the trial court instructed the jury on the definition of "willfully" as follows:
 "A person acts willfully when it is a specific intention to cause a certain result or that he intentionally failed to do that which he should have done. It must be established in this case that at the time in question there was present in the mind of the defendant a specific intention to elude or flee a police officer."
Appellant objects to the italicized portion of the jury instruction. Appellant argues defining willfully as intentionally failing to do something a person should have done implies an omission to act, i.e., that he had to duty to another person to act and he failed to do so. Appellant claims this definition applies to a civil case where negligence or possibly recklessness is alleged; it should not app ly to a criminal case where the issue is whether the defendant acted with the specific intention to cause a certain result.
We interpret "that which he should have done" in the trial court's instruction to mean that which he was obligated by law to do, not that he had a duty to another person to act. The issue in this case is whether Appellant intentionally failed to comply with the lawful order of a police officer to stop, not whether he failed to act on a duty he owed to the police officer. We assume the jury understood that was the issue in the case long before the trial court gave the jury instructions. Therefore, Appellant's fourth assignment of error is overruled.
Judgment Reversed and Remanded for proceedings consistent with this opinion.
FAIN, J., concurs.