JOURNAL ENTRY and OPINION
A jury found defendant Lenzie Taylor guilty of one count of sexual battery, a violation of R.C. 2907.03. In this appeal, he claims the court erred by giving incorrect jury instructions and that the state committed prosecutorial misconduct by making an indirect reference to his failure to testify on his own behalf.
The state's evidence showed that the sequence of events leading to the sexual battery began when the victim met defendant's cousin on a bus two days before the offense. The victim and the cousin exchanged telephone numbers, and the cousin called the victim the following day. Their conversation proceeded to the point where the cousin asked the victim to come over to his house and have sex with him, and the victim agreed.
The victim went to the cousin's house the next day. When she arrived, she and the cousin were the only ones present. They immediately began engaging in the first of three sexual encounters that occurred that morning. The victim testified that she wanted the sex to terminate during the first encounter, but that she gave in to the cousin's constant pleading for a second and third time.
The third encounter took place in the living room. As it occurred, the victim noticed defendant walk in the room. At the time, both she and the cousin were wearing only sweatshirts. The victim testified that defendant said, [m]y mother going to smell sex in the air and I'm going to get in trouble, so could you give me some? The cousin told the victim that defendant was cool. The victim resisted, saying that I don't go in the family like that. At that point, the victim said that defendant threatened to beat my ass and that he would call the police and report her for breaking and entering. The victim knew that defendant did not own the house, but defendant picked up the telephone and spoke (or pretended to speak, the victim was not sure) to someone and give a description of her and state the house address. The cousin sat there and told defendant to let her go, but defendant refused, saying he wanted the victim to perform oral sex on him. The cousin suggested to the victim that she give in, but she refused.
By this time, defendant and his cousin had let the victim dress in the kitchen. Defendant gave the victim her coat, but held on to her purse saying that the only way I could get my purse was if I gave him some or when the police came and pick me up * * *. While this was happening, defendant grabbed me by my arm and he was touching me on my behind, and he had me blocked so I couldn't move. She said that there was no other physical force used.
The victim accused the cousin of setting her up. The cousin denied this, and she and defendant walked into the hallway. Defendant also denied that he and his cousin set her up, and he asked me to give him some sex and I told him no, so he kept on asking me over and over again. I kept on saying no. And then he threatened me again saying if I don't give him none, he going to call the police on me. The victim said she was scared and confused, and she feared for her life. She gave in and they went into the bedroom. They began engaging in intercourse, but the victim said she was hurting. Defendant then asked for oral sex, but the victim said no. Defendant kept on asking me over and over again, so she gave in to his pleading.
Defendant did not present any evidence, but during his cross-examination of a police detective presented by the state, the court allowed the detective to read into the record defendant's written statement. In that statement, defendant maintained that he and the victim engaged in mutual sexual conduct. He claimed that the victim turned on him after his cousin began chiding her for having sex with two men on the same day. The cousin suggested that the victim bring a friend the next time, but the victim said there would be no next time. The cousin said, she lying, she be back over here.
 I
The first assignment of error complains the court erred by failing to give defendant's proposed jury instruction containing the definition of the sexual battery element of a person of ordinary resolution. Defendant wanted the court to instruct the jury that in order to find Lenzie Taylor guilty of sexual battery, you must find beyond a reasonable doubt that he coerced [the victim] to engage in sexual conduct by means that would prevent resistance by a person of ordinary resolution * * *. Defendant sought this instruction because the evidence showed that the victim had learning disabilities, lacked street smarts and may have been more easily coerced than other persons.
As a general proposition, the court should give a jury instruction if it correctly states the law as applied to the facts in the case and the evidence would allow reasonable minds to reach the conclusion sought by the instruction. Murphy v. Carrollton Mfg. Co. (1991), 61 Ohio St.3d 585,591. The court may refuse to give an instruction that is not applicable to the evidence presented or is an incorrect statement of law. State v. Cross (1979), 58 Ohio St.2d 482, 488. When reviewing a trial court's jury instructions, an appellate court reviews whether the trial court's refusal to give a requested jury instruction constitutes an abuse of discretion. State v. Yontz (1999), 135 Ohio App.3d 530, 537, citing State v. Wolons (1989), 44 Ohio St.3d 64, 68.
R.C. 2907.03(A)(1) states that no person shall engage in sexual conduct with another when the offender knowingly coerces the other person to submit by any means that would prevent resistance by a person of ordinary resolution. The Committee Comment to HB 511 states:
 This section forbids sexual conduct with a person other than the offender's spouse in a variety of situations where the offender takes unconscionable advantage of the victim.
 It includes sexual conduct by coercion, which is somewhat broader than sexual conduct by force — one of the key elements of rape. It also includes sexual conduct when the victim's judgment is obviously impaired, * * *.
Defendant proposed the following instruction:
 As I have just instructed you, in order to find Lenzie Taylor guilty of sexual battery, you must find beyond a reasonable doubt that he coerced [the victim] to engage in sexual conduct by means that would prevent resistance by a person of ordinary resolution. If you find that the defendant did not coerce [the victim] to engage in sexual conduct as I have defined those terms for you, you must find the defendant not guilty. On the other hand, if you find that the defendant did coerce [the victim] to engage in sexual conduct, you must then determine whether the coercion was by means that would prevent a person of ordinary resolution to resist, not necessarily whether [the victim] was prevented from resisting. In determining whether the state has proved this element, you will use the common, everyday meaning of the words contained in the phrase a person of ordinary resolution.
The court rejected this instruction and told the jury that in order to find defendant guilty of sexual battery it had to find that he engaged in sexual conduct with the victim, who was not his spouse, by knowingly coercing her to submit by means that would have prevented resistence by a person of ordinary resolution.
The difficulty with defendant's argument is that it suffers from the same infirmity that he claims affects the court's instruction his proposed jury instruction does not define the phrase person of ordinary resolution other than to instruct the jury to give those words their ordinary meaning.
Defendant correctly notes that the phrase person of ordinary resolution is not defined in the Revised Code. When a word or phrase is not defined by the General Assembly, the word or phrase should be given its ordinary meaning. See, e.g., Harman Group Corporate Finance, Inc. v. Academy of Medicine of Columbus Franklin Cty. (1994), 94 Ohio App.3d 712, 722
(statute did not define "effect"; therefore, the jury could give it its plain and ordinary meaning).
The only word requiring a definition in the contested phrase is the word resolution. As used in the context of R.C. 2907.03(A)(1), resolution means a firmness of purpose an ability to resist coercion. This word is not so arcane or unusual that the ordinary juror would be unable to understand its meaning absent a definition from the court. Words of ordinary or common usage need not be defined for the jury. State v. Riggins (1986), 35 Ohio App.3d 1, 8. We find the court had no duty to define the word for the jury.
We take this opportunity to note that the parties expended considerable effort at trial to show that the victim lacked the mental or intellectual capacity to understand the nature of defendant's threats. Defendant tried to show that his act of threatening to call the police to report the victim for breaking and entering was a sham that it was such hyperbole that no reasonable person would have believed his threat. The state, on the other hand, tried to show that the victim lacked the intellect to appreciate that these were jokes or hyperbole.
We view both positions as misplaced, for they confuse the concept of intellect with the concept of resolve. A person of great intellect could nonetheless lack ordinary resolution, while a person of limited intellect could have great resolve. The two concepts are not the same and we refuse to confuse them. Because the assignment of error is limited solely to the court's alleged failure to define the phrase person of ordinary resolve, we need not engage in any discussion of whether the evidence presented at trial supported the jury's verdict. The first assignment of error is overruled.
 II
The second assignment of error complains that the state engaged in prosecutorial misconduct by making a reference to defendant's failure to present the cousin as a witness and in making an indirect reference to defendant's failure to testify.
As a general matter, the conduct of a prosecuting attorney at trial will not be grounds for reversal unless the conduct deprives the defendant of a fair trial. State v. Apanovitch (1987), 33 Ohio St.3d 19; State v. Papp (1978), 64 Ohio App.2d 203. A new trial will be awarded only in cases when the prosecutor asks improper questions or makes improper remarks and those questions or remarks substantially prejudiced appellant. State v. Smith (1984), 14 Ohio St.3d 13, 470 N.E.2d 883. We must ask whether, absent the improper questions or remarks, the jury still would have found the appellant guilty. State v. Maurer (1984),15 Ohio St.3d 239, 266, 473 N.E.2d 768; State v. Dixon (Mar. 13, 1997), Cuyahoga App. No. 68338, unreported.
The state made the following closing argument to the jury:
 Now basically, three people know what the truth is in this case. [The victim], Lenzie Taylor, and [the cousin].
 [The victim's] the accuser. She is required by law to come in here and take an oath and tell you what she knows and be subject to cross-examination. You have her version.
 When Detective Strickler testified, he read you Lenzie Taylor's version. That's something for you to consider. It's not under oath.
 It's not subject to cross-examination, but the Court allows you to consider what he said to Detective Strickler. That's two.
 Where's his cousin at? It's a legitimate question mark that you should have in your minds. Where is [the cousin] at? If you were being charged with a crime, and your cousin has some important information, you would take your cousin and put him right here.
The state did not engage in misconduct by noting the cousin's failure to testify. In State v. Clemons (1998), 82 Ohio St.3d 438, 452, the Ohio Supreme Court stated, [t]he comment that a witness other than the accused did not testify is not improper, State v. D'Ambrosio (1993),67 Ohio St.3d 185, 193, 616 N.E.2d 909, 916, since the prosecution may comment upon the failure of the defense to offer evidence in support of its case. (Citations omitted.)
As for remarks about the detective reading defendant's written statement, we do not find they created an inference that defendant improperly exercised his right not to testify. Fairly read, the state's remarks suggest that there were two versions of events in front of the jury: the victim's and defendant's. Hence, the remark that's two.
The state did remind the jury that defendant's statement was not given while under oath, but we do not see that as an unfair comment on defendant's refusal to testify. In State v. Davis (1996),76 Ohio St.3d 107, 119-120, the Ohio Supreme Court found that prosecutorial comment on the lack of cross-examination on a defendant's unsworn statement was consistent with [State v.] DePew [(1988),38 Ohio St.3d 275, 528 N.E.2d 542]. See, also, State v. Smith (2000),87 Ohio St.3d 424, 444. The second assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, P.J., and ANN DYKE, J., CONCUR.
 __________________________ MICHAEL J. CORRIGAN, JUDGE