OPINION
Defendant, Carol Lee McGonegal, appeals from her conviction and sentence for possessing marijuana in an amount over 20,000 grams, in violation of R.C. 2925.11(A).
McGonegal owned a restaurant in Dayton where she employed Ron Jackson and Mel Rue. In addition to their restaurant employment, Jackson and Rue sold marijuana for McGonegal's boyfriend, Andre Ghanime aka Robert Downing ("Downing"). Through the course of their dealings, Jackson and Rue became aware of Downing's method of operating his drug business.
Jackson helped Downing pick out and purchase a motor home, which Downing used to make frequent trips to Arizona to purchase large quantities of marijuana. Downing would then drive the loaded motor home back to Dayton, where he and others sold the marijuana. Downing stored the marijuana in the motor home, which he kept parked in a storage facility.
On June 9, 1998, Jackson and Rue were involved in an altercation at McGonegal's restaurant, and McGonegal fired them. After they were fired, Jackson and Rue made a number of threats and generally harassed McGonegal.
The harassment culminated on June 12, 1998, when Jackson called McGonegal and informed her that he had called the police to inform about Downing's business and the location and contents of the motor home. When the call ended, Downing and McGonegal immediately drove to the storage facility to get the motor home and move it before the police arrived.
Meanwhile, the police department received the tip from Jackson regarding the location and contents of the motor vehicle. The police dispatched officers to look for a motor vehicle matching the description provided by the informant leaving the storage lot.
When McGonegal and Downing arrived at the storage facility, they found Jackson and Rue in front of the lot. Jackson and Rue began taunting McGonegal and Downing. McGonegal and Downing promptly fled and proceeded to drive around to the back of the facility to see if there was a way to get inside. Finding that there was not, McGonegal drove Downing to a nearby shopping center so that he could make a phone call.
When Downing returned to the car, he told McGonegal that he had informed his business partners of the situation. Downing stated that this situation was McGonegal's fault, and that she had to move the motor home or "they" would kill her.
McGonegal walked into the storage facility, started the vehicle, and drove it from the lot. The police watched her leave and stopped her when she violated a traffic law. The officers noticed a strong smell of marijuana when they approached the motor home. McGonegal did not produce a valid driver's license, so the officers detained her in a patrol car and called for a drug-sniffing dog. The dog alerted upon the vehicle, and the officers had the vehicle towed to an impound lot. Subsequently, a search warrant was obtained for the vehicle, and a search revealed more than 300 pounds of marijuana inside.
McGonegal was arrested for driving without a license and failure to properly signal for a turn. She was transported to the police department, where she waived her rights and made oral and written statements to Det. Mike Auricchio and Sgt. Wilhelm.
McGonegal stated that she met Downing in San Diego and, when he moved to Dayton, she followed him. She stated that Downing ran a drug business, and that she frequently drove to Arizona with Downing to pick up large quantities of marijuana to sell in Dayton. On one occasion she flew to Arizona to meet Downing there, carrying approximately $100,000 which Downing used to buy marijuana that they then transported back to Dayton. McGonegal stated that Jackson and Rue, her former employees, called her to tell her that they had informed the police about the location and contents of the motor home. She stated that Downing demanded that she drive the motor home out of the storage lot.
On July 14, 1998, McGonegal was indicted and charged with one count of possessing marijuana in an amount over 20,000 grams. McGonegal sought to suppress certain evidence, but her motion was denied. She was tried by a jury on October 16-18, 2000. The jury returned a guilty verdict on October 19, 2000. On December 6, 2000, the trial court imposed a sentence of a prison term of eight years.
McGonegal filed timely notice of appeal. She presents two assignments of error.
 FIRST ASSIGNMENT OF ERROR THE PROSECUTION COMMITTED MISCONDUCT TO THE EXTENT THAT IT DENIED APPELLANT A FAIR TRIAL, AS GUARANTEED BY THE DUE PROCESS CLAUSES OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION TEN OF THE OHIO CONSTITUTION, WHEN IT CALLED A REBUTTAL WITNESS WHO COMMENTED ON APPELLANT'S POST-ARREST SILENCE
McGonegal argues that the prosecution committed misconduct when it presented evidence regarding her post-arrest silence. However, McGonegal waived her right to remain silent when she was arrested and questioned at the police department. The testimony shows that McGonegal spoke freely with Det. Auricchio and Sgt. Wilhelm, and prepared a lengthy written statement. What she said in those interviews is admissible against her. Evid.R. 801(D).
During the interviews, McGonegal did not speak of any threats or coercion that she received from Downing. Yet, at trial, McGonegal put on the defense of duress, stating that Downing was physically and psychologically abusive toward her throughout the relationship, and that he abused drugs and alcohol. McGonegal emphasized that Downing had made threats to her safety if she did not move the motor vehicle.
The State sought to exploit the inconsistency between McGonegal's statement on the day she was arrested and her testimony at trial by calling a detective who had acted as the case agent as a rebuttal witness. Det. Anita Hauser testified that she did not become aware that McGonegal was claiming duress until the first day of the trial when, in the opening statement, her defense attorney focused squarely on Downing's pattern of abuse and his threats the day of the incident.
As an initial matter, we reject Defendant-Appellant's claim that the matter of which she complains amounts to prosecutorial misconduct. The test for prosecutorial misconduct is whether the prosecutor's acts were improper in their nature and character and, if they were, whether the substantial rights of the defendant to a fair trial were prejudiced thereby. State v. Smith (1984), 14 Ohio St.3d 13. It is not enough to argue that prejudice resulted from the prosecutor's actions. The prosecutor's conduct must itself be improper. That element is wholly lacking here. We shall address the prejudice argued, but in terms of the error that might apply. We strongly caution defense counsel against impugning the professional integrity of prosecutors through misplaced claims of misconduct.
We begin by noting that "the admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v.Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. A reviewing court may not reverse the trial court's decision on the admission of evidence absent an abuse of discretion. Peters v. Ohio StateLottery Comm. (1992), 63 Ohio St.3d 296. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.2d 217, 219.
In order to admit extrinsic evidence of McGonegal's prior inconsistent statements through the testimony of Det. Hauser, the State was required by Evid.R. 613(B) to afford McGonegal an opportunity to explain or deny the inconsistency. The record shows that it did.
During McGonegal's case-in-chief, the State elicited the following testimony from McGonegal on cross examination:
 . . . my question to you is, Ma'am, the — the thing that's on your mind at the moment you talk to [Det.] Auricchio is the threats that Ron Jackson has been making. You, in fact, make no reference whatsoever anywhere in there to Ron threatening you; do you? None.
Excuse me?
 You make no reference to Robert [Downing] — pardon me, threatening you in that statement?
A. No, I did not.
T. 368
McGonegal didn't deny the inconsistency between her interview statements and her trial testimony; in fact, she conceded it. Even so, the State was authorized by Evid.R. 613(B) to exploit the inconsistency through the testimony of Det. Hauser, though it was cumulative to McGonegal's own admission.
The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND VIOLATED THE DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITUTION WHEN IT ADMITTED EVIDENCE THAT APPELLANT WAS INVOLVED IN OTHER DRUG TRANSACTIONS NOT COVERED IN THE INDICTMENT
McGonegal argues that evidence that she accompanied Downing to Arizona on numerous occasions to buy large quantities of marijuana and transport it back to Dayton was inadmissible "other acts" evidence.
During his testimony, Det. Auricchio read McGonegal's written statement from the day of the arrest into the record. In the statement, McGonegal admitted that she flew to California two weeks earlier to meet Downing, and they proceeded to Arizona to pick up a load of marijuana, which they then transported back to Dayton in the motor vehicle. After he took her statement, Auricchio questioned McGonegal further regarding Downing's drug business. McGonegal told him that she had gone to Arizona with Downing to buy marijuana on about ten occasions in the previous three years, that Downing usually bought about 600 pounds of marijuana on each trip, and that once she had flown to Arizona with approximately $100,000 that Downing used to make a marijuana purchase.
Det. Kevin Bollinger, a detective who was involved in the case, testified on McGonegal's behalf. On cross examination, Bollinger testified that McGonegal had told him that she accompanied Downing on eight trips to Arizona, and that the amount of marijuana that they brought back ranged from 150 to 600 pounds.
Again, we note that decisions regarding the admission of evidence generally rests within the discretion of the trial court, and we may reverse only where an abuse of discretion is demonstrated. Peters,supra.
This assignment of error involves the interplay of three rules of evidence. First, an out of court statement is not hearsay if it is a statement of admission by a party, offered by a party opponent. Evid.R. 801(D).
Second, evidence of other crimes, wrongs, or acts is not admissible to prove a defendant's criminal propensity. Evid.R. 404(B). "Other acts" evidence is admissible, however, if "(1) there is substantial proof that the alleged other acts were committed by the defendant, and (2) the evidence tends to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." State v. Lowe
(1994), 69 Ohio St.3d 527, 530. See also Evid.R. 404(B); R.C. 2945.59. However, we have held that in order for testimony to be admitted under an exception to Evid.R. 404(B), the matter concerned must genuinely be a material issue. State v. Smith (1992), 84 Ohio App.3d 647.
Finally, we must note the general rule regarding character evidence: if the prejudicial effect of the evidence substantially outweighs its probative value, the evidence is inadmissible. Evid.R. 403(A).
The parties do not dispute that McGonegal's statements regarding other trips to Arizona are admissions, and therefore are not hearsay pursuant to Evid.R. 801(D). However, McGonegal argues that none of the Evid.R. 404(B) exceptions apply, while the State argues that McGonegal's duress defense made motive a material issue.
Motive has been defined as "a mental state which induces an act," Statev. Curry (1975), 43 Ohio St.2d 66, 70, and the "[c]ause or reason that moves the will and induces action," Black's Law Dictionary (5.Ed.Rev.1979) 914.
Duress is an affirmative defense to criminal liability under some circumstances. State v. Cross (1979), 58 Ohio St.2d 482. We have previously stated that "[a] person whose free will has been overcome by coercion or threats from another person, and as a result commits an act which he otherwise would not have committed that constitutes a crime, may under certain circumstances be found not criminally liable for that crime." State, City of Dayton v. Stiles (June 12, 1998), Montgomery App. No. 16588, unreported.
We find that the concept of "motive" and the defense of "duress" are so intertwined that by claiming duress, McGonegal placed her motive in issue. That, in turn, opened the door to admission of relevant "other acts" evidence to rebut the duress defense. Testimony concerning McGonegal's actions on prior occasions was certainly relevant to prove that her motive on the occasion of her alleged offense was not what she claimed it to be, and the relevance of the statements is not outweighed by any prejudice that may have resulted.
The trial court did not abuse the substantial discretion afforded it when it admitted "other acts" evidence regarding McGonegal's prior involvement in drug activity. The second assignment of error is overruled.
 Conclusion
Having overruled each assignment of error presented, the judgment from which the appeal is taken will be affirmed.
WOLFF, P.J. and YOUNG, J., concur.