OPINION
Defendant, Timothy G. Doakes, appeals from his conviction and resulting sentence for the offense of Robbery, R.C. 2911.02(A)(3), which the court entered upon its verdict of guilty following a bench trial. Doakes presents a single assignment of error, which states:
 THE TRIAL COURT ERRED BY APPLYING TO THE DURESS DEFENSE AN OBJECTIVE, RATHER THAN A SUBJECTIVE, STANDARD TO DEFENDANT'S CONDUCT.
During the early morning hours of October 12, 2000, Doakes was abducted by two men when they discovered Doakes and several other young men attempting to steal a car. Doakes didn't know the two men, whom he could later identify only by the names Shawn and Virgil. They beat Doakes and forced him into the car. Shawn brandished a gun during their ride to another location in Dayton. He told Doakes that the gun was loaded, so don't try to run.
When they arrived at the other location, which was a house, they were met by a gang of about twelve young men. They beat, kicked, and stomped Doakes, who eventually passed out from a blow to the head with a gun. Doakes awoke later inside the house to find himself naked. The gang had since been joined by two young women.
During the next several hours Doakes was sexually brutalized and was burned with cigarette ashes and a hot knife. He was also made to smoke crack. When daylight arrived Doakes was forced to wear a dress and wash the car he'd attempted to steal. Shawn took Doakes to the back yard and fired a gun into the air. He told Doakes: "If you try to run, I'm going to shoot you in your back." (T. 127). Shawn also told Doakes that if Doakes would rob a nearby liquor store, he'd be released. Doakes agreed to rob the store.
Doakes was given sweat pants and a jacket to wear, along with shoes too big for his feet. He was given an empty BB pistol resembling a firearm to use in the robbery. Shawn and Virgil, who also had a gun, walked Doakes to where the liquor store was located. They stood across the street, which is a four-lane roadway divided by a landscaped strip, while Doakes walked into the store.
After waiting for several customers to be served, and his request to one of them for help having been ignored, Doakes reached the sales counter. He told the clerk that "some guys" across the street who had guns wanted him to rob the store, and that if Doakes didn't cooperate he would be killed. Doakes then asked the clerk for money. He also held his hand in his pocket, but didn't brandish the BB pistol.
The clerk asked Doakes who it was who wanted him to rob the store. Doakes again indicated that it was "two guys" outside. The clerk picked up his cell phone and left through the front door, saying he intended to call the police. The clerk locked the front door when he left. He called police from outside.
The clerk, Victor Ojezua, testified at trial that about thirty minutes passed from the time that Doakes entered the store until Ojezua left through the front door. Some part of that time passed while Ojezua served customers. Other than from the substance of their conversation, which is meager, the record does not otherwise reflect how much time passed while Doakes and Ojezua conversed.
After Ojezua left the store Doakes picked up some money from the sales counter, intending to give it to Shawn and Virgil. Doakes walked to a back room of the store and discarded the BB pistol. At some point he looked out a rear door and saw Ojezua talking on the cell phone. Doakes assumed that Ojezua was speaking with police. Doakes closed the door and remained inside the store until police arrived. He later testified that he didn't run "[b]ecause I didn't want to rob the store anymore. If I would have run, they would have knew that I tried to rob the store." (T. 156-157). Doakes added that he wanted police to arrive. Id.
Three officers who responded to Ojezua's call testified at trial. One officer, William Myers, testified that he saw Doakes "pop open the back door and then looked (sic) at us and pulled the back door real quick." (T. 16). When the officers entered the store they found Doakes standing in the sales area, his hands on his head. (T. 27). He surrendered willingly. At trial, Doakes testified that when police walked him from the store he saw Shawn and Virgil in a crowd of people across the street. He testified that he told the officers what had happened to him, and pointed to Shawn and Virgil as "the guys who made me do this" (T. 153), but the officers paid no attention. Id.
Doakes was nineteen years of age when he was tried on a robbery charge in February of 2001. Arresting officers testified that Doakes later told them what had happened to him, though he omitted the sexual brutality claims. Dr. William E. Brown, a psychologist, testified that Doakes told him of the sexual brutality, adding that a victim's shame often keeps the victim from being forthcoming about such events. Dr. Brown testified that Doakes has a low IQ and is a follower. He opined that Doakes was in a survival mode and feared for his life when he entered the store, believing that he had to comply with Shawn and Virgil's instructions to avoid being shot.
The trial court found that the evidence proved the essential elements of Robbery beyond a reasonable doubt. Doakes argued the affirmative defense of duress. After noting that Doakes' burden of proof was but by a preponderance of the evidence, the court rejected Doakes' argument, stating:
 "Regardless, the Defendant did not meet even this burden with regard to the absence of a reasonable opportunity to escape the threat. The Defendant and the clerk conversed for approximately 20 minutes when they could not see, or be seen by, the two people who were allegedly across a four-land boulevard with a gun. The Defendant did not call the police, ask the clerk to call the police, or give the weapon to the clerk. Further, after the clerk left, the Defendant took money from the counter, placed the weapon in the back room, and looked out the back door where, according to an officer, the Defendant popped out his head and then closed the door." (Decision and Entry, p. 4).
The court found Doakes guilty of Robbery and entered a judgment of conviction. Doakes was subsequently sentenced to community control sanctions.
On appeal, Doakes doesn't argue that the trial court's rejection of his affirmative defense of duress is against the manifest weight of the evidence. Instead, Doakes argues a narrower error, that the trial court employed the wrong legal standard when it weighed the evidence relevant to the duress defense. Doakes argues that a subjective standard, not an objective standard, is applicable.
 Duress is an affirmative defense to criminal liability under some circumstances. State v. Cross (1979), 58 Ohio St.2d 482, 391 N.E.2d 319; State v. Sappienza
(1911), 84 Ohio St. 63, 95 N.E. 381; Baldwins, Ohio Criminal Law, Section 91.3. A person whose free will has been overcome by coercion or threats from another person, and as a result commits an act which he otherwise would not have committed that constitutes a crime, may under certain circumstances be found not criminally liable for that crime.
 One of the essential features of a duress or necessity defense is the sense of present, imminent, immediate death or serious bodily injury. State v. Cross, supra. The force or coercion used to compel the actor's conduct must remain constant, controlling the actor's will for the entire time he commits the act, and must be of such a nature that the actor cannot safely withdraw or escape. State v. Grinnell (1996), 112 Ohio App.3d 124, 678 N.E.2d 231. The actor's subjective belief must be objectively reasonable. State v. Harkness (1991), 75 Ohio App.3d 7, 598 N.E.2d 836.
Dayton v. Stiles (June 12, 1998), Montgomery App. No. 16588, unreported.
The trial court didn't find that Doakes had not been subjected to coercion and threats, or that Doakes lacked a subjective belief that Shawn and Virgil would kill him if he failed to comply with their directions. Rather, the court rejected Doakes' duress defense on a finding that the force compelling him to act had sufficiently abated while Doakes was in the store, and that he failed to use avenues reasonably available to him to get help from police in order to escape from the harm that was threatened. Reasonableness involves an objective standard, and the court applied the correct standard in this instance to arrive at the result that it reached.
Doakes argues that he reasonably had no opportunity to either call for help or escape, and that he "was unable to formulate an objective escape plan because of his age, mental condition, and the circumstances of the psychological and physical torture he had undergone." (Brief, p. 4). The record does not demonstrate that Doakes had any way to call the police after the clerk left the store with his cell phone. The front door was locked. Doakes might have left through the rear door, but didn't. Doakes explained that when he saw the clerk speaking on the phone he believed that the clerk was speaking to the police and thought that flight would more likely portray culpability.
Doakes' arguments concerning his age, mental condition, and the experience he's suffered present a form of diminished capacity defense, which the law does not recognize. The issue presented was whether Doakes acted reasonably in view of the duress he was under. Reasonableness is an objective determination involving combined issues of fact and law. The trial court correctly applied an objective standard, not a subjective standard limited to Doakes' particular frame of mind.
The State was required to present evidence which proved Doakes' guilt of the crime of Robbery, beyond a reasonable doubt. However, Doakes' burden was to prove his affirmative defense only by a preponderance of the evidence. R.C. 2901.05(A).
 By "preponderance of evidence" is meant the greater weight of evidence. It does not mean that more witnesses have testified on one side than on the other; in other words, it does not have reference to the number of witnesses testifying, or the mere quantity of evidence, but to the quality thereof. It means simply that after the testimony of all the witnesses has been weighed, with reference to their credibility, exactness of memory, and all the circumstances surrounding their testimony, the evidence of one side outweighs that of the other.
44 Ohio Jurisprudence 3d, Evidence, Section 1028, pp. 435-436. (Citations omitted.)
Reasonably, Doakes could not have safely attempted to flee from the store while Shawn and Virgil waited outside with guns. Further, it appears from the record that Doakes had no way to call for help when the clerk left the store with the cell phone. The clerk said he intended to call for police help, and did. At that stage, it was reasonable for Doakes to wait for police to arrive. Once they arrived and Doakes saw them when he looked out the back door, as Officer Myers testified, Doakes had an opportunity to escape the danger that Shawn and Virgil posed by walking out the back door to surrender to police. Doakes didn't follow that course, but remained inside waiting for police.
Whether the alternative that Doakes elected to follow was less reasonable than the alternative he rejected is a close question. Both might be reasonable. However, the "no safe escape" test that the duress defense incorporates comprehends an element of urgency. Doakes' conduct when he saw police outside the rear door portrays a lack of urgency. Doakes testified that he didn't run away because he feared that it would make him appear culpable. However, a safe surrender to police at the earliest available opportunity would have avoided that implication more effectively. It was the reasonable path to follow, and Doakes rejected it. Therefore, the trial court correctly rejected his defense of duress.
The assignment of error is overruled. The judgment of the trial court will be affirmed.
WOLFF, P.J. and BROGAN, J., concur.