[Cite as *State v. Holloman*, 2026-Ohio-1461.]

IN THE OHIO COURT OF APPEALS
FIFTH APPELLATE DISTRICT
DELAWARE COUNTY, OHIO

STATE OF OHIO

    Plaintiff - Appellee

-vs-

MARTIN HOLLOMAN

    Defendant - Appellant

Case No. 25 CAA 08 0068

Opinion And Judgment Entry

Appeal from the Delaware County Court of Common Pleas, Case No. 25 CR I 05 0337

Judgment:  Affirmed

Date of Judgment Entry: April 22, 2026

BEFORE: Andrew J. King, William B. Hoffman, and Kevin W. Popham, Judges

APPEARANCES:  Melissa A. Schiffel and Katheryn L. Munger, for Plaintiff-Appellee; April F. Campbell, for Defendant-Appellant

OPINION

*Popham, J.,*

{¶1}  Defendant-appellant Martin Holloman appeals his convictions following a jury trial in Delaware County.  Holloman argues that the trial court abused its discretion by refusing to instruct the jury on the affirmative defense of duress.  For the reasons set forth below, we affirm.

*Facts & Procedural History*

{¶2}  Holloman was charged in a five-count indictment by the Delaware County Grand Jury.  The charges were as follows:  (1) Count 1 – Failure To Comply With An Order Or Signal Of A Police Officer, in violation of R.C. 2921.331(B) and R.C.

2921.331(C)(5)(a)(ii), a felony of the third degree; (2) Count 2 – Theft, in violation of R.C. 2913.02(A)(1) and R.C. 2913.02(B)(2), a felony of the fifth degree; (3) Count 3 – Theft, in violation of R.C. 2913.02(A)(1) and R.C. 2913.02(B)(2), a misdemeanor of the first degree; (4) Count 4 – Theft, in violation of R.C. 2913.02(A)(1) and R.C. 2913.02(B)(2), a felony of the fifth degree; and (5) Count 5 – Theft, in violation of R.C. 2913.02(A)(1) and R.C. 2913.02(B)(2), a misdemeanor of the first degree.

{¶3} Initially, Holloman pled no contest to Count 1 and guilty to Count 2 in exchange for the State dismissing Counts 3, 4, and 5. On June 24, 2025, Holloman moved to withdraw his plea. Over the State's objection, the trial court granted the motion and scheduled a jury trial.

{¶4} Holloman does not dispute that on January 12, 14, 15, and 16, 2025, he entered a Walmart store in Lewis Center, Ohio and exited with unpaid merchandise. However, he disputes the asset protection investigator's valuation of the stolen items.

{¶5} On January 16, 2025, after Holloman left Walmart in a silver Jeep, asset protection investigator Theodore Hopkins contacted the Delaware County Sheriff's Office and provided the office with a description of the vehicle. Subsequently, Deputy John Herrington located the Jeep in a nearby McDonald's parking lot and activated his lights and siren.

{¶6} The driver (who Herrington identified at trial as Holloman) initially complied with Herrington's order to stop the vehicle. Holloman exited the vehicle and placed his hands behind his back as Herrington instructed. However, as Herrington attempted to handcuff him, Holloman pulled away, escaped Herrington's grasp, and reentered the vehicle. A struggle followed as Herrington attempted to remove Hollman's

hands from the steering wheel by grabbing Holloman's wrist. Herrington denied intentionally striking Holloman and stated his elbow never touched Holloman.

{¶7} Holloman placed the vehicle in reverse while Herrington was still in the vehicle. Herrington exited the vehicle and testified that the car door struck him as Holloman backed up. Holloman then sped away. Herrington saw Holloman head south. Herrington radioed to other officers, who pursued Holloman. Herrington did not participate in the pursuit.

{¶8} Deputy Jason Wilson of the Delaware County Sheriff's Office responded to the call about the Walmart theft. As he arrived on the scene, he heard Herrington state that Holloman fled, so Wilson pursued Holloman southbound with lights and sirens activated. Holloman drove at high speeds on U.S. 23, continued onto I-270 eastbound, and then I-71 southbound, before driving on city streets. Wilson observed Holloman run multiple red lights, ignore stop signs, swerve in and out of traffic, and almost hit several other vehicles. The pursuit was eventually transferred to the Columbus Police Department when Holloman entered Franklin County.

{¶9} Officer Joel George of the Columbus Police Department became the lead officer in the pursuit when Holloman entered Franklin County. He observed Holloman driving erratically, running red lights, almost hitting a pedestrian, and driving at high speeds. At one point, two Columbus Police cruisers collided while attempting to avoid a collision with Holloman. Officers ultimately used spike strips and a PIT ("Precision Immobilization Technique") maneuver to stop Holloman, who crashed the Jeep, fled on foot, and was apprehended.

{¶10} The State introduced into evidence the dashcam and bodycam videos from Herrington, the dashcam and bodycam videos from George, dashcam videos from other

Columbus Police officers, surveillance video from Walmart, surveillance video from McDonald's, and photographs of the merchandise in the trunk of Holloman's vehicle.

{¶11} Hollman testified in his own defense. He claimed he fled because Herrington came inside the vehicle, pulled him out of the vehicle, and "made [him] freak out" because Holloman has post-traumatic stress disorder. Hollman stated that when Herrington was trying to pull his hands off of the steering wheel, Herrington elbowed him, sending Holloman's "teeth straight through [his] lip." Hollman testified that he was "not acting under his own will" and it was "either fight or flight." Hollman thought Herrington was behind him during the police chase and thus he acted out of "fear and adrenaline."

{¶12} Hollman requested that the trial court give the jury an instruction about the affirmative defense of duress. The trial court found the evidence at trial did not support a duress instruction.

{¶13} The jury found Holloman guilty on all counts. On August 28, 2025, the trial court sentenced him to 48 months on Count 1, 12 months on Count 2, and ordered the sentences to be served consecutively. Holloman was given time served for the remainder of the counts.

{¶14} Holloman appeals his convictions and assigns the following as error:

{¶15} "I. THE TRIAL COURT ABUSED ITS DISCRETION IN NOT INSTRUCTING THE JURY ON HOLLOMAN'S DURESS DEFENSE."

*Standard of Review*

{¶16} "A trial court must fully and completely give all instructions relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact-finder." *State v. Young*, 2003-Ohio-1254, ¶ 9 (2nd Dist.), citing *State v. Comen*, 50 Ohio St.3d

206 (1990). A criminal defendant is entitled to an instruction on an affirmative defense if he "has introduced sufficient evidence which, if believed, would raise a question in the minds of reasonable [people] concerning the existence of the issue. *State v. Johnson*, 2007-Ohio-5662, ¶ 21 (2nd Dist.)

{¶17} We review a trial court's refusal to provide a requested jury instruction for an abuse of discretion. *State v. Thomas*, 2015-Ohio-4932, ¶ 35 (5th Dist.). An abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

*Duress*

{¶18} Duress is an affirmative defense in Ohio. *State v. Poole*, 33 Ohio St.2d 18, 19 (1973). To establish duress, Hollman must demonstrate that he was compelled to commit a crime under threat, by another person, of imminent death or serious bodily injury. "The force used to compel the actor's conduct must remain constant, controlling the will of the unwilling actor during the entire time he commits the act, and must be of such a nature that the actor cannot safely withdraw." *State v. Getsy*, 84 Ohio St.3d 180, 199 (1998). Fear of future harm is insufficient. *Id.* Although the actor must subjectively believe that he is being threatened with imminent death or serious bodily harm if he does not commit the crime, that belief must be objectively reasonable based on the evidence. *State v. Doakes*, 2001-Ohio-6984, *7 (2nd Dist.).

{¶19} The defense of duress requires proof that: (1) the harm was caused by the pressure of a human force; (2) the harm sought to be avoided was greater than, or at least equal to, that sought to be prevented by the law defining the offense charged; (3) the defendant reasonably believed at the moment that his act was necessary and was designed

to avoid the greater harm; (4) the defendant was without fault in bringing about the situation; and (5) the threatened harm was imminent, leaving no alternative by which to avoid the greater harm. *State v. Flinders*, 2012-Ohio-2882, ¶ 30 (9th Dist.). "All the conditions must be met, and the court must find as a matter of law that the evidence is sufficient to warrant an instruction." *State v. Cross*, 58 Ohio St.2d 482, 488 (1979). If unsupported by the evidence, the trial court may properly refuse to instruct the jury on duress. *Id.*

**{¶20}** The Supreme Court of Ohio has made clear that the defense of duress is "strictly and extremely limited in application and will probably be effective in very rare occasions." *Id.*

**{¶21}** Holloman testified he subjectively believed that he was being threatened with imminent serious bodily harm by Herrington, and that he had no choice but to flee because he believed Herrington was going to hurt him. However, the trial court was required to determine whether that belief was objectively reasonable.

**{¶22}** Upon our review of the record, we agree with the trial court's conclusion that the evidence did not support Holloman's contention that the affirmative defense of duress was applicable to the facts of the case.

**{¶23}** First, Holloman was not without fault in bringing about the situation. The testimony of Herrington, which is confirmed by his bodycam and dashcam videos, is that, while Holloman initially complied, when Herrington attempted to place the handcuffs on Holloman, Holloman pulled away, escaped Herrington's grasp, and reentered the vehicle, prompting the ensuing events. Any alleged "elbowing" by Herrington did not occur until Holloman was back in the vehicle, and after Herrington told Holloman to "stop" numerous times.

**{¶24}** Further, the threatened harm was neither constant nor imminent and was not of such nature that Holloman could not safely withdraw. Herrington remained in the McDonald's parking lot and did not participate in the pursuit. Further, even if Holloman did not realize Herrington remained in the parking lot, when the chase entered Franklin County, a completely different agency with different police cars led the chase. Thus, any belief that Herrington was going to imminently hurt Holloman was not objectively reasonable. Additionally, the surveillance video showed that when Holloman initially pulled out of the McDonald's parking lot, no police vehicles were immediately following him. To be sure, any threat was not constant or imminent.

**{¶25}** Finally, Holloman testified that he was under duress because he felt that if Herrington was the officer that pulled him over and Herrington was alone with Holloman, Herrington would seriously injure Holloman. As detailed above, Herrington was not involved in the police chase and, at least part way through the chase, the Columbus Police Department became the agency attempting to apprehend Herrington. Further, fear of future harm is not sufficient to prove the affirmative defense of duress. Thus, Holloman's asserted fear – that Herrington may be the one to pull him over and may injure him if they are left alone – reflects fear of future harm, which is insufficient to establish duress. *State v. Simes*, 2016-Ohio-7300, ¶ 31 (8th Dist.).

**{¶26}** Under these circumstances, the trial court did not abuse its discretion in refusing to instruct the jury on duress. Holloman's assignment of error is overruled.

For the reasons stated in our Opinion, the judgment of the Delaware County Court of Common Pleas is affirmed.

Costs to Appellant, Martin Holloman.

By: Popham, J.

King, P.J. and

Hoffman, J., concur