[Cite as *State v. Longstreth*, 2011-Ohio-1825.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                              :

    Plaintiff-Appellee                  :          C.A. CASE NO.    24287

v.                                        :          T.C. NO.    10CR99

MATTHEW H. LONGSTRETH          :          (Criminal appeal from
                                                    Common Pleas Court)

    Defendant-Appellant            :

                                          :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ____15th____ day of ____April____, 2011.

. . . . . . . . . .

TIMOTHY J. COLE, Atty. Reg. No. 0084117, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

JAY A. ADAMS, Atty. Reg. No. 0072135, 424 Patterson Road, Dayton, Ohio 45419
    Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

{¶ 1}  Matthew Longstreth appeals from a judgment of the Montgomery County Court of Common Pleas, which found him guilty of escape and sentenced him to two years in prison.

I

**{¶ 2}**  The parties' Joint Stipulation of Fact set forth the background of this case. In March 2009, Longstreth was convicted of three counts of receiving stolen property in violation of R.C. 2913.51(A); one count was a felony of the fifth degree and two counts were misdemeanors of the first degree.  He received an aggregate sentence of ten months in prison and was approved for a transitional control program.

**{¶ 3}**  In July 2009, Longstreth was placed on transitional control at the Dayton Success for Life Center ("DSFL"), a halfway house in Dayton, Ohio.  He obtained employment at Wendy's restaurant, but he subsequently terminated this employment.

**{¶ 4}**  On November 19, 2009, Longstreth left DSFL to look for employment and he did not return.  As a result, on December 3, 2009, the Transitional Control Behavioral Review Committee recommended that his transitional control be revoked.

**{¶ 5}**  Longstreth was indicted for Escape in February 2010, and he waived his right to a jury trial.   A bench trial was held, at which the Joint Stipulation of Fact was offered into evidence.  (The trial itself was not transcribed for this court.)   The Joint Stipulation of Fact further stated:

**{¶ 6}**  "If called to testify, Matthew Longstreth would testify that he had been threatened with physical violence if he returned to the half-way house by other residents. He would testify that this is the basis for his failure to return to the half[-]way house.  Mr. Longstreth was subsequently sanctioned for his failure to return to the half-way house and the violation of his post-release control resulted in Mr. Longstreth being sent back to prison on this violation."

{¶ 7} Longstreth filed a post-trial memorandum in support of his position that he had an affirmative defense – duress – for breaking detention, and therefore could not be found guilty of the crime.

{¶ 8} The trial court rejected Longstreth's affirmative defense of duress, reasoning: "Because there is no evidence before the Court that Defendant communicated this 'duress' to his halfway house supervisor or anyone else, or was under the immediacy of the type of legal duress addressed in the cases which he submitted, for the entire time of his absence, the Court finds that this defense is not available to Defendant, and that he is GUILTY of the offense of Escape as charged in the indictment." He was sentenced accordingly.

{¶ 9} Longstreth raises one assignment of error on appeal.

II

{¶ 10} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT WHEN IT FAILED TO PROPERLY CONSIDER THE AFFIRMATIVE DEFENSE OF DURESS."

{¶ 11} Longstreth claims that the trial court failed to properly consider his affirmative defense and that the trial court's reasoning was "flawed" in two respects. First, he asserts that case law regarding duress does not impose a requirement that he inform anyone, including staff at the halfway house, of the alleged threats against him. Second, he asserts that his mental state was only relevant at the time of the escape and that the continuation of his fear thereafter was "immaterial;" thus, he claims that the trial court erred in relying on the fact that his fear of impending physical harm had not continued throughout the entirety of his absence from the facility. We interpret this argument as an assertion that

his conviction for escape was against the manifest weight of the evidence.

{¶ 12} In order to establish the defense of duress, the defendant must demonstrate that he was compelled to commit the crime under threat, by another person, of imminent death or serious bodily injury. *State v. Lawson*, Montgomery App. No. 22155, 2008-Ohio-1311, ¶19, citing *State v. Elijah* (July 14, 2000), Montgomery App. No. 18034. "The force used to compel the actor's conduct must remain constant, controlling the will of the unwilling actor during the entire time he commits the act, and must be of such a nature that the actor cannot safely withdraw." Id., citing *State v. Getsy,* 84 Ohio St.3d 180, 199, 1998-Ohio-533.   Although the defendant must subjectively believe that he is being threatened with imminent death or serious bodily harm if he does not commit the crime, that belief must be objectively reasonable based on the evidence.   *Elijah,* supra; *State v. Doakes,* Montgomery App. No. 18811, 2001-Ohio-6995.

{¶ 13} In *State v. Cross* (1979), 58 Ohio St.3d 482, the Supreme Court of Ohio recognized that, while a defense such as necessity or duress *may* provide justification for a prison escape under certain circumstances, "rigid limitations on the viability of the defense [must be in place] to insure that the rights and interests of society will not be impinged upon" and to "prevent mass self-help releases." Id. at 486. *Cross* did not set forth unique elements for a defense of necessity or duress with respect to a prison escape, but it did discuss several reasonable considerations in assessing the validity of such a claim: whether there was "the sense of present, imminent, immediate and impending death, or serious bodily injury" (as with any claim of necessity or duress); whether the inmate complained to the authorities about the condition(s) prior to the escape; whether the inmate had the time or

means to resort to the legal system for redress; and whether the inmate turned himself in immediately after fleeing the supposed intolerable or threatening conditions. Id. at 487-488. The court emphasized that the defense of necessity or duress "is strictly and extremely limited in application and will probably be effective in very rare occasions. It is a defense and not a conjured afterthought." Id. at 488.

{¶ 14} In light of *Cross*, the trial court reasonably considered the lack of any evidence that Longstreth reported his "'duress'" to the supervisor of the halfway house – or anyone else – before or after his escape. It also reasonably considered his failure to turn himself in to authorities during the weeks after his escape, when he was not under a present and immediate threat. Longstreth's assertion that his state of mind after he initially failed to return to the halfway house was immaterial is without merit, because the definition of escape encompasses the purposeful failure to return to detention following temporary leave for a specific purpose or limited period. R.C. 2921.34(A). By Longstreth's own stipulation, he left the halfway house – presumably with permission – to look for work, and opted not to return because of his fear of violence. His alleged reason for staying away over an extended period of time and his failure to report his fear to authorities during this period were relevant considerations.

{¶ 15} The trial court reasonably concluded that Longstreth's claim that he had escaped from DSFL under duress was not credible, and its finding Longstreth guilty of escape was not against the manifest weight of the evidence.

{¶ 16} The assignment of error is overruled.

III

**{¶ 17}** The judgment of the trial court will be affirmed.

. . . . . . . . . .

GRADY, P.J. and BROGAN, J., concur.

(Hon. James A. Brogan, retired from the Second District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Timothy J. Cole
Jay A. Adams
Hon. Gregory F. Singer