[Cite as *State v. Jones*, 2019-Ohio-239.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

|  |  |  |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2018-CA-18 |
| | : | |
| v. | : | Trial Court Case No. 2015-CR-643A |
| | : | |
| KRISTA NACOLE JONES | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 25th day of January, 2019.

. . . . . . . . . .

ANDREW P. PICKERING, Atty. Reg. No. 0068770, Clark County Prosecutor's Office, Appellate Division, 50 E. Columbia Street, Suite 449, Springfield, Ohio 45502
    Attorney for Plaintiff-Appellee

CHRISTOPHER C. GREEN, Atty. Reg. No. 0077072, 130 W. Second Street, Suite 830, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1} Krista Nacole Jones appeals from her conviction and sentence on two counts of discharging a firearm at or into a habitation, improper handling of a firearm in a motor vehicle, having weapons while under disability, failure to comply with an order or signal of a police officer, and a firearm specification.

{¶ 2} In her sole assignment of error, Jones contends the trial court erred in disallowing a proposed jury instruction on the affirmative defense of duress.

{¶ 3} The record reflects that Jones' convictions stemmed from her role as the getaway driver in two shootings. At trial, the State presented evidence that Jones drove her vehicle, a red SUV with temporary tags, to pick up two armed accomplices, Aaron Roberts and Dennis Kennedy, on the night of September 22, 2015. The State's theory was that the two men planned to shoot up two houses in retaliation for a shooting that had occurred on Kenton Avenue in Springfield.

{¶ 4} On the night in question, Jones drove Roberts and Kennedy to Lafayette Avenue where she parked, and they exited her vehicle. The two men proceeded on foot a block away to Pine Street, where they shot up a residence with assault rifles. They then ran back to the SUV, and Jones drove away. A while later, Jones parked her SUV in the vicinity of a residence on South Center Boulevard. Roberts and Kennedy exited the SUV and shot up a residence on that street. The two men then returned to Jones' vehicle, and the trio drove away.

{¶ 5} Based on eyewitness reports of a red SUV with temporary tags being involved in the shootings, police began looking for Jones' vehicle. Police began following her shortly after the second incident. As they pursued, Jones increased her speed,

running stop signs and red lights. Police eventually punctured her tires with stop sticks, and she began to slow down. Kennedy fled the SUV on foot, while Jones and Roberts remained in the vehicle. Jones and Roberts were arrested after the vehicle stopped. Kennedy also was captured and arrested. When she was removed from the SUV, Jones did not appear to be upset and initially said nothing to police. She did not initially report being threatened or held at gunpoint. After five or ten minutes, however, she did claim the two men had kidnapped her. It seemed to the police like she was "just kind of making it up off the top of her head." (Trial Tr. Vol. 2 at 408). At the police station later that night, Jones claimed she was sitting in a parking lot when two unknown men got into her car, pointed a gun at her, and told her to drive. She admitted driving the two men around but did not mention taking them to the vicinity of Pine Street or South Center Boulevard. (Trial Tr. Vol. 3 at 476-478).

{¶ 6} Jones testified in her own defense at trial. She explained that a friend had called her shortly after 10:00 p.m. to tell her about a house on Kenton Avenue being shot up. She then received a call from Kennedy, who wanted her to come pick him up at a house off of Columbus Avenue. (Trial Tr. Vol. 4 at 571). As soon as she pulled in the driveway, Roberts and Kennedy came outside and entered her SUV. Jones described the two men as "angry" and "frantic." They told her to "go" and started assembling their rifles in her car. (*Id.* at 573). They directed her to a street a block away from Pine Street, where they had her stop. The two men then exited the SUV with their rifles. (*Id.* at 577). At that point, Jones claimed she "didn't know" what Roberts and Kennedy were going to do. (*Id.*). She subsequently heard gunfire over on Pine Street and wondered to herself, "What in the world are they doing?" (*Id.* at 578). When asked by defense counsel why she did not

just drive away, Jones responded: "I just—I don't know. I was nervous, and I'm like if I just leave them here in the south side with these ARs in the middle of the street after they just did all this, they're just gonna be mad at me too. It's not like they don't know where I live, you know." (*Id.* at 578).

{¶ 7} Jones testified that after the two men returned to the SUV, they directed her to a location on South Center Boulevard. Jones claimed that the men pointed their weapons at her when she told them to get out of her car. (*Id.* at 580). She testified that she was scared and did not feel like she could escape. (*Id.*). When she got to the location on South Center Boulevard, the two men exited the SUV again and proceeded to fire shots at the second house. Defense counsel again inquired about why Jones did not drive away when Roberts and Kennedy left her vehicle. She responded that she did not think about driving away because she was "nervous" and "scared." (*Id.* at 581). With regard to the ensuing police pursuit, Jones testified that the two men directed her not to stop and that she was afraid. (*Id.* at 582). When asked whether she could have escaped or gotten away from the situation that night, Jones responded: "Even if I would have gotten away then, they would have eventually caught up with me later." (*Id.* at 587).

{¶ 8} On cross examination, Jones admitted lying to police about not knowing Roberts and Kennedy and about them accosting her at gunpoint in a parking lot. (*Id.* at 588). With regard to the Pine Street shooting, she testified that the two men told her to pull over on Lafayette Avenue and to stay there when they exited the car. Roberts and Kennedy then disappeared into the darkness and were gone. (*Id.* at 604). Jones did not drive away and did not call 911 despite having her cell phone with her. (*Id.* at 605). Instead, she sat and waited while hearing "lots" of gunshots. At that point, she knew that

the two men had "shot somebody up." (*Id.*). Despite the fact that the two men had left her car and gone down an alley to the next block over on Pine Street, where they fired approximately thirty rounds, Jones explained that she did not drive away because she was "scared" Roberts and Kennedy would come "find [her] after the fact because [she] left them there." (*Id.* at 607). Jones also claimed not to have known whether she had "time" to pull away. (*Id.*).

{¶ 9} With regard to the second shooting, Jones testified that she parked around the corner from the house on South Center Boulevard. (*Id.* at 609-610, 612). Roberts and Kennedy then went out of her sight to the side of a house somewhere behind her. (*Id.* at 612). For the first time on cross examination, Jones asserted that on this occasion she actually did try to pull away but was blocked by another car. (*Id.* at 614). Once again, however, Jones did not call 911 despite having her cell phone with her. (*Id.* at 616). As for the police pursuit that followed, Jones testified that Roberts and Kennedy would not allow her to pull over and stop. (*Id.* at 621). Upon being stopped by police, Jones acknowledged that she never asked for help and lied about what had happened. (*Id.* at 625). On redirect examination, Jones claimed she did not know whether Roberts and Kennedy could see her on either occasion after they exited her SUV. (*Id.* at 630).

{¶ 10} Following Jones' testimony, defense counsel rested and asked for a jury instruction on the affirmative defense of duress. (*Id.* at 632-633). Defense counsel requested the instruction on all counts except for the charge of improperly discharging a firearm at or into the habitation on Pine Street.[1] (*Id.* at 637-638). After hearing argument

---

[1] Defense counsel argued that Jones was not guilty on that count because she did not know what Roberts and Kennedy were going to do until after she heard the gunfire. Therefore, the affirmative defense of duress did not apply to that count because Jones

on the issue, the trial court overruled Jones' motion for a duress instruction. It reasoned:

> \* \* \* [T]he duress defense necessitates a sense of present imminent, immediate death or serious bodily harm, that the threat must remain. The force or coercion used must remain constant, controlling the actor's will for the entire time, and the actor cannot safely withdraw from the escape—or withdraw by escape.
>
> Based on the testimony that the Court heard from the Defendant, it does not appear to the Court that there was a continuous threat; although, it could be argued that her fear was continuous because of threat. But at that point, it was for fear of future harm; and it does appear from her testimony that she did have means of reasonable escape.
>
> In fact, the testimony regarding the incidents that occurred, which has not been denied by the Defense, is that these people were a good distance away from the car, in one instance from one street to another street, parallel streets, to perform the act. So there does appear to have been an ability to safely withdraw or escape from the immediate threat.

(*Id.* at 639-640).

**{¶ 11}** "Requested jury instructions should ordinarily be given if they are correct statements of law, if they are applicable to the facts in the case, and if reasonable minds might reach the conclusion sought by the requested instruction. \* \* \* An appellate court reviews a trial court's refusal to give a requested jury instruction for abuse of discretion." (Citations omitted) *State v. Adams*, 144 Ohio St. 3d 429, 2015-Ohio-3954, 45 N.E.3d 127,

---

simply denied committing the offense at all.

¶ 240. This court addressed the defense of duress in *State v. Longstreth*, 2d Dist. Montgomery No. 24287, 2011-Ohio-1825, as follows:

> In order to establish the defense of duress, the defendant must demonstrate that he was compelled to commit the crime under threat, by another person, of imminent death or serious bodily injury. *State v. Lawson*, Montgomery App. No. 22155, 2008-Ohio-1311, ¶ 19, citing *State v. Elijah* (July 14, 2000), Montgomery App. No. 18034. "The force used to compel the actor's conduct must remain constant, controlling the will of the unwilling actor during the entire time he commits the act, and must be of such a nature that the actor cannot safely withdraw." *Id.*, citing *State v. Getsy*, 84 Ohio St.3d 180, 199, 1998-Ohio-533. Although the defendant must subjectively believe that he is being threatened with imminent death or serious bodily harm if he does not commit the crime, that belief must be objectively reasonable based on the evidence. *Elijah*, supra; *State v. Doakes*, Montgomery App. No. 18811, 2001-Ohio-6995.

*Id.* at ¶ 12.

{¶ 12} For a duress defense to be viable, "[t]he force and harm threatened must be *in praesenti*; fear of future harm is not a sound basis for the defense of duress." *State v. Hackley*, 2d Dist. Montgomery No. 11407, 1990 WL 119292, *5 (Aug. 15, 1990), citing *State v. Good*, 110 Ohio App. 415, 419, 165 N.E.2d 28 (10th Dist. 1960); *see also State v. Simes*, 8th Dist. Cuyahoga No. 103672, 2016-Ohio-7300, ¶ 40 ("Fear of future harm is not sufficient to prove the affirmative defense of duress. * * * Appellant's fear that Towns would 'make good' on his threat at some undetermined time in the future is insufficient to

support a duress instruction."). "The Ohio Supreme Court has made clear that the defense of duress is 'strictly and extremely limited in application and will probably be effective in very rare occasions.' " *State v. Zhang*, 6th Dist. Wood No. WD-15-018, 2016-Ohio-975, ¶ 19, quoting *State v. Cross*, 58 Ohio St.2d 482, 488, 391 N.E.2d 319, 323 (1979).

**{¶ 13}** With the foregoing standards in mind, we see no abuse of discretion in the trial court's refusal to give a duress instruction. As relevant here, the key components of the duress defense were a threat of imminent death or serious bodily harm and an inability to safely withdraw from the threat. Based on Jones' own testimony, the trial court reasonably concluded that she had a means of withdrawing or escaping from the threat posed by Roberts and Kennedy. At a minimum, Jones could have driven away after she parked on Lafayette Avenue and the two men exited her car and began shooting a block away on Pine Street. The record reflects that Roberts and Kennedy fired numerous shots at the house on Pine Street. Although Jones did not know precisely where the two men were at that time, she would have known that they were not in her immediate vicinity, that they were shooting at something else, and that she did not then face an imminent threat of death or serious physical harm. Even if Jones subjectively believed that she faced such an imminent threat while the two men were engaged in an active shooting a block away in the darkness, her belief was not "objectively reasonable based on the evidence."[2] *Longstreth* at ¶ 12. Therefore, the trial court correctly declined to give a duress instruction.

**{¶ 14}** We recognize that it is perhaps a closer question whether Jones could

---

[2] In any event, Jones made clear that her primary fear after Roberts and Kennedy left her alone in her SUV was that they later would find and kill her if she drove away. But even a reasonable fear of future harm is insufficient to support the affirmative defense of duress. *See, e.g.*, *Hackley* at *5.

reasonably have withdrawn or escaped in the middle of the failure to comply offense once the police began chasing her vehicle. Dennis Kennedy and Aaron Roberts were back in her vehicle at that time. But during her testimony about the chase she did not contend that they made any specific threats, or pointed a gun, or threatened to shoot her. "I ran the stop signs and red lights because the men had guns in my car that was telling me to do so." (Tr. at 619). She admitted, however, that she was drunk at the time (*Id.* at 619), and "the whole situation caused serious risk and harm to everybody involved." (*Id.* at 620). The chase went from Springfield to South Charleston. When she looked in her mirror, she saw "a lot" of police cars following her. Not only had she failed to leave the criminal activity when opportunities were previously available, she failed to simply stop with multiple police cars behind her. Under these circumstances the trial court did not abuse its discretion by not separately giving a duress instruction for the failure to comply offense.

{¶ 15} Jones' assignment of error is overruled, and the judgment of the Clark County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and TUCKER, J., concur.

Copies sent to:

Andrew P. Pickering
Christopher C. Green
Hon. Richard J. O'Neill