[Cite as *State v. Sherburne*, 2026-Ohio-2112.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

State of Ohio
Court of Appeals No.  E-25-022

Appellee
Trial Court No.  2022 CR 0321

v.

Derek Sherburne
**DECISION AND JUDGMENT**

Appellant
Decided: June 5, 2026

* * * * *

Kevin J. Baxter, Erie County Prosecuting Attorney, and
Kristin R. Palmer, Assistant Prosecuting Attorney, for appellee.

Edwin J. Vargas, for appellant.

* * * * *

**OSOWIK, P.J.**

*Procedural History*

{¶ 1} On August 11, 2022, the Erie County Grand Jury indicted Derek M.

Sherburne on four counts, all alleged to have occurred on or about December 1, 2021.

Count One: Aggravated Possession of Drugs, a felony of the first degree, in violation of

R.C. 2925.11.  Count Two: Aggravated Trafficking in Drugs, a felony of the first degree,

in violation of R.C. 2925.03(A)(2), 2925.03(C) (1)( e).  Count Three: Possession of a

Fentanyl-Related Compound, a felony of the first degree, in violation of R.C. 2925.11(A), 2925.11(C)(11)(g). Count Four: Trafficking in a Fentanyl-Related Compound, felony of the first degree, in violation of R.C. 2925.03(A)(2), 2925.03(C)(9)(h). Counts Three and Four also each charged Sherburne with one additional specification under R.C. 2941.1410(A) Major Drug Offender Specification "MDO."

{¶ 2} On March 27, 2025, the case was tried to the bench, with Sherburne having waived his right to a jury trial. The trial court found Sherburne guilty on each count, as well as the MDO Specifications attached to Counts Three and Four.

{¶ 3} Sherburne was sentenced to 3 to 4 1/2 years on Count 1 ; 3 to 4 1/2 years on Count 2; 11 to 16 1/2 years on Count 3; 11 to 16 1/2 on Count 4; and 3 years on each major drug offender specification that are attached to Count 3 and 4. The court then ordered Counts 1 and 2 merged, setting a total sentence of 3 to 4 1/2, and Counts 3 and 4 and the specifications merged for a total of 14 to 19 1/2 years. The Court ordered that Counts 1 and 2 would run concurrently to Counts 3 and 4 for a total of 14 to 19 1/2, with 58 days of credit for time served, and 5 years of post-release control.

{¶ 4} On June 17, 2025, Sherburne filed this timely appeal.

Assignment of Error

{¶ 5} Sherburne ascribes but a single error by the trial court for our consideration:
> THE TRIAL COURT ERRED IN FINDING THE APPELLANT'S AFFIRMATIVE DEFENSE OF DURESS NOT VIABLE.

{¶ 6} Sherburne argues that the trial court reviewed the evidence presented at trial to determine his guilt or innocence. He further asserts that "It is apparent that the trial

2.

court did not discuss the evidence of duress in relation to the appellant's standard of proof by a preponderance of the evidence." Therefore, without explicitly stating so, his argument implies that the trial court utilized a reasonable doubt standard in its consideration of any duress evidence.

{¶ 7} Nevertheless, appellant agrees that the trial court's analysis of his affirmative defense of duress is correct in its reliance on *State v. Zhang*, 2016-Ohio-975, ¶ 17 (6th Dist.). In that case, we held:

{¶ 8} The defense of duress requires proof of the following:

> (1) a harm due to the pressure of a human force; (2) the harm sought to be avoided was greater than, or at least equal to that sought to be prevented by the law defining the offense charged; (3) the actor reasonably believed at the moment that his act was necessary and was designed to avoid the greater harm; (4) the actor was without fault in bringing about the situation; and (5) the threatened harm was imminent, leaving no alternative by which to avoid the greater harm. *State v. Flinders*, 9th Dist. Summit No. 26024, 2012–Ohio–2882, ¶ 30. *State v. Zhang*, (6th Dist.) 2016-Ohio-975, ¶ 17

{¶ 9} In its application of the *Zhang* factors to the evidence adduced at trial, appellant argues that the trial court erred when it made two critical findings.

I.      *Absence of an imminent threat.*

{¶ 10} The first objectionable finding by the trial court was the absence of any imminent threat to appellant. Sherburne claims that there was "sufficient evidence" in the record that co-defendant Marvin Parker had made threats against his family and had "made good" on those threats by having his associates assault and rob him in the past.

3.

## The Testimony at Trial

### *Derek Sherburne*

{¶ 11} Appellant testified that had been a drug addict in the past, using every day, all day with his drug of choice being mainly "opiate related." His addiction plagued him for nearly a decade. He met his co-defendant Marvin Parker through another dealer about four years prior to this case. Sherburne referred to Parker as "some drug dealer, a gang member person."

{¶ 12} Appellant testified that, in the past, he was threatened that "something would happen to me if I bought from somebody else." He believed those threats would include "violence or be killed, or my family, I mean."

{¶ 13} Sherburne recounted two episodes where such violence occurred and both of these experiences have their genesis at Circle K. Both incidents occurred, according to appellant's best recollection, "within six months to a year" before the date of the current charges. Once, as he was walking out, two people asked him why he wasn't "paying him this money, and what have you." One person slapped the drink out of his hand, slammed him on the ground and he was "roughed up." Sherburne believed that the person who assaulted him was doing so at the behest of Marvin Parker. Without identifying the assailant, Sherburne testified that the attacker was now deceased.

{¶ 14} The second incident occurred after he saw somebody at Circle K that he knew was a "part of that circle." He went home and that person followed him and parked behind him, blocked him and further prevented him from "getting out." Sherburne then testified that the person got out his car and "I got robbed, to put it, you know, in basic

4.

terms. I was robbed for money that I supposedly owed that I didn't." Sherburne testified that he believed that this person was also associated with Marvin Parker.

{¶ 15} Based upon these prior disturbing incidents, appellant believed that he could not refuse any request of Marvin Parker because he was afraid of being harmed or killed or "whatever."

{¶ 16} On the day of his arrest in this case, Sherburne recounted how he was receiving calls from Marvin Parker. He deliberately did not answer these calls. Finally, he answered his phone just to see what Parker wanted. In either event, he (Sherburne) "was looking to get something anyways." Parker responded that he had "something else" for Sherburne to do. He then walked to Parker's house to receive further instructions from him.

{¶ 17} Sherburne went on to testify that Marvin Parker wanted him to drive a Jeep "up north" and that he was to follow Parker. He was afraid to say no. He got into the Jeep and followed Parker to a gas station. When they stopped, Parker came over and put "that bag in the car and then he threw the cell phone in it – in the car, and that's when he told me hey, you're going to go over here and do this and – and that's how it was." He was to receive a call from "some Tim guy." Sherburne then went to the Comfort Inn and when he got there "I believe I had to call that number and say that I was there or something like that." However, before that happened, appellant was arrested.

{¶ 18} Sherburne admitted that during this entire odyssey he was not in imminent risk of any physical harm. The following exchange took place at trial when he testified:

5.

A:     Like there was no gun pointed to my head exactly, is that what you're trying to say?

Q:     Well, was there a gun pointed to your head?

A:     No.

Q      Okay. Was there somebody sitting next to you in the car going to drive to the Comfort Inn or I'm going to break your arm, right here, right now?

A:     No.

Q:     Was anybody going to do that?

A:     Doesn't have to be, no, because I'm afraid of what they're gonna do to me.

{¶ 19} Curiously, at trial, Sherburne related yet another event that occurred after he was released from custody pending trial. In that incident, Sherburne claimed that Parker's cousin kidnapped him, forced him to remove his shoes and jacket and made him throw his phone in the front yard and searched him "for a wire." He then drove Sherburne around and "ended up driving me back home and let me out." Sherburne also claimed that the kidnapper was now deceased.

*Sergeant Eric Costante*

{¶ 20} Costante, a Sandusky Police sergeant and former detective, participated in the December 1, 2021 takedown at the Comfort Inn. He encountered Sherburne alone in the driver's seat of a dark Jeep and extracted him after a patrol vehicle activated overhead lights. He led Sherburne to an unmarked police vehicle and observed no other persons near Sherburne besides officers. He saw no weapons on Sherburne or in the vehicle, and no officers found any weapons. He testified Sherburne did not state he feared anyone or was threatened, and said he was paid to participate in this endeavor.

6.

*Detective Sergeant Eric Graybill*

**{¶ 21}** Graybill was a Sandusky detective sergeant overseeing detectives and narcotics. He was present at the Comfort Inn and took part in the approach and arrest. He testified that Sherburne parked voluntarily and no other occupants or weapons were observed. Reviewing body cam and reports, he found no statement by Sherburne that he was forced or threatened. Sherburne cited the need for money.

*Detective Ron Brotherton*

**{¶ 22}** Brotherton was a Sandusky narcotics detective and DEA (federal Drug Enforcement Administration) task force officer. He coordinated a buy-bust using a confidential informant ("CI") who identified "Rio" in Mansfield and provided Rio's number. Rio was later identified as Marvin Parker. Acting on the CI's phone, he arranged approximately 9 ounces meth and 4 ounces fentanyl, initially at Kalahari, then changed the location to test who had the drugs. He observed a GMC ("General Motors Corporation") Terrain and a Jeep arrive in tandem at the Mobil gas station. Parker exited the GMC and leaned into the Jeep. After Brotherton changed the location citing police presence, the Jeep departed to the Comfort Inn. The GMC left later and was stopped near Route 2. Maps showed multiple opportunities for a trail car to deviate and break away from the lead car. The distance from Mobil to Comfort Inn was about 1.3 miles. Brotherton further authenticated the evidence submission and BCI ("Bureau of Criminal Investigation") lab report and confirmed the seized items were from Sherburne's Jeep. BCI found 223.01 grams meth and 109.54 grams fentanyl, exceeding 50x bulk for meth and over 100 grams for fentanyl.

7.

{¶ 23} Post-arrest, Sherburne agreed to an unrecorded interview. Brotherton testified Sherburne said Parker paid him $100 to follow him to Sandusky, that he had done similar trips before, and bought a $60 gram from Parker on this occasion. Sherburne did not indicate threats or coercion by anyone. Brotherton saw no threatening behavior or weapons by Parker at the gas station. Brotherton said Parker had no prior criminal history. Further, Sherburne had three phones in his possession at the time of his arrest and could have called 911.

## II. *Sherburne was at fault in bringing about the situation*

{¶ 24} The second objectionable finding by the trial court was that Sherburne was at fault for bringing about the situation. The court found that Sherburne was a drug user that dealt with Marvin Parker for "a long time" and further, that he was not naïve to the world of drug activity. Sherburne argues that he was never the focus of the drug bust and that he was simply a "compromised puppet" of the intended target, Marvin Parker. He argues that it was an abuse of discretion for the trial court to have made such a finding.

## *Law and Analysis*

{¶ 25} Duress is an affirmative defense in Ohio. An affirmative defense represents not a mere denial or contradiction of evidence which the prosecution has offered as proof of an essential element of the crime charged, but, rather, they represent a substantive or independent matter which the defendant claims exempts him from liability even if it is conceded that the facts claimed by the prosecution are true. Among those defenses, in Ohio, are self-defense, duress, insanity, and intoxication. Affirmative defenses must be

8.

proved by a preponderance of the evidence. *State v. Poole,* 33 Ohio St. 2d 18, 19 (1973), citing *State v. Vargo,* 116 Ohio St. 495, 507 (1927).

{¶ 26} Preponderance of the evidence means the greater weight of the evidence, or evidence that leads the trier of fact to find that the existence of a contested fact is more probable than its nonexistence. *Calabrese L. Firm v. Christie*, 2024-Ohio-579, ¶ 42, citing *Croone v. Arif*, 2014-Ohio-5546, ¶ 18, (8th Dist.) citing *401 *State v. Stumpf*, 32 Ohio St.3d 95, 102 (1987). As such, the burden of proof, by a preponderance of the evidence is upon the accused. R.C. 2901.05(A).

{¶ 27} The affirmative defense of duress is strictly and extremely limited in application and will probably be effective only in very rare occasions. *State v. Cross*, 58 Ohio St.2d 482, 488 (1979). An essential feature of duress is the sense of present, imminent, immediate and impending death, or serious bodily injury. *Id*. at 487. In other words, an imminent, immediate danger or threat of danger must prevent the individual from exercising his own will leaving no alterative path of action. *Id*. at 483 fn. 2. As a result, the actor is forced to choose between the lesser of two evils. *Id*.

{¶ 28} As we noted, to establish the presence of duress, a defendant must prove five elements: (1) a harm due to the pressure of a human force; (2) the harm sought to be avoided was greater than, or at least equal to that sought to be prevented by the law defining the offense charged; (3) the actor reasonably believed at the moment that his act was necessary and was designed to avoid the greater harm; (4) the actor was without fault in bringing about the situation; and (5) the threatened harm was imminent, leaving no alternative by which to avoid the greater harm. *Zhang, Id*.

9.

**{¶ 29}** Additionally, the time frame for which a defendant may claim the experience of duress is limited. For a duress defense to be viable, the force and harm threatened must be in *praesenti;* fear of future harm is not a sound basis for the defense of duress. *State v. Hackley*, 1990 WL 119292, *5 (2d Dist. Aug. 15, 1990), citing *State v. Good*, 110 Ohio App. 415, 419 (10th Dist. 1960); *see also State v. Simes*, 2016-Ohio-7300, ¶ 40 (8th Dist.) (Fear of future harm is not sufficient to prove the affirmative defense of duress).

**{¶ 30}** Appellant's fear that Parker would 'make good' on some perceived threat at some undetermined time in the future is insufficient to support a duress defense. *State v. Zhang*, 2016-Ohio-975, ¶ 19 (6th Dist.), quoting *State v. Cross*, 58 Ohio St.2d 482, 488 (1979). * *State v. Jones*, 2019-Ohio-239, ¶ 12 (2d Dist.); *See also State v. Hayes*, 2019-Ohio-1629, ¶ 26 (5th Dist.).

**{¶ 31}** At trial, Sherburne testified he subjectively believed that he was being threatened with imminent serious bodily harm or even death if he did not commit the crimes. His belief is founded on two incidents that occurred prior to these crimes having been committed.

**{¶ 32}** The evidence establishes that anywhere from six months to a year prior to these offenses, Sherburne testified that he was publicly assaulted at Circle K and even "robbed" at his home on another occasion by associates working at the behest of Parker. Despite these two serious events, there is no evidence that Sherburne reported either to the police.

10.

{¶ 33} On the day of these offenses, Sherburne testified that he received a phone call from Parker. He did not describe the phone call as threatening. Indeed, coincidentally, Sherburne even wanted to make some purchases from Parker. He said Parker wanted him to do "something." In fact, he walked to Parker's home for further instructions, showing no fear.

{¶ 34} As the events of the day unfolded, Sherburne followed Parker in a Jeep at his ready disposal and direction. Sherburne never testified that he saw any weapons on or about Parker at any time. In fact, arresting officers never saw nor did they find any weapons. Sherburne had many opportunities to terminate his involvement in this crime and easily break away beginning at Parker's home. There was nothing prohibiting him from doing so on the way to the Mobil gas station and to the Comfort Inn. The evidence establishes that Sherburne had three cell phones in his possession while he was driving the Jeep and following Parker. He failed to call anyone for assistance. At no point after his arrest did he indicate any fear or duress to any of the officers involved. Later, he even agreed to cooperate with police without expressing any fear of reprisals from Parker or anyone else.

{¶ 35} Thus, despite appellant's claim that there was "sufficient evidence" to support his defense of duress, a review of the entire record reveals that appellant was presented with numerous opportunities for self-help or escape during his entire endeavor with Parker. The evidence demonstrated no fear by appellant of Parker. This is hardly indicative of someone who is under the immediate and continuous threat of violence from

11.

which he could not safely withdraw. *State v. Nelson*, 2024-Ohio-5750, ¶ 27, (12th Dist.) citing *State v. Broughton*, 1993 WL 38178,*3 (12th Dist. Feb. 16, 1993).

{¶ 36} In making its assessment concerning Sherburne's claim of duress, the trial court explicitly stated that its findings were made after assessing the credibility of the appellant. The trial court must determine if the belief regarding the danger of imminent death or grave bodily injury is objectively reasonable based upon the evidence submitted in defense of the crime. *See State v. Harkness*, 75 Ohio App.3d 7, 11 (6th Dist. 1991). The court referred to the claim as a "conjured afterthought." Obviously, the trial court found Sherburne's claims of duress to be wholly incredulous.

{¶ 37} Given these circumstances, we find no evidence of an immediate and continuous threat of harm, and we find no abuse of discretion in the trial court's judgment in finding that Sherburne failed to establish any rational fear based upon any imminent threat by Marvin Parker that would have compelled him to commit the criminal acts for which he was ultimately convicted.

{¶ 38} Additionally, Sherburne was also unable to prove by a preponderance of the evidence that he was without fault in bringing about the situation. *State v. Nelson*, 2024-Ohio-5750, ¶ 28 (12th Dist.), citing *State v. Flinders*, 2012-Ohio-2882, at ¶ 30 (9th Dist.); *State v. Lawson*, 2008-Ohio-1311, ¶ 20-21 (2d Dist.). By his own admission, Sherburne had been obtaining his drugs from Parker for years. He voluntarily maintained his relationship with the alleged coercer to supply his own drug habit, and to occasionally make some money for himself by engaging in his prior illegal conduct with Parker, despite having characterized him as a "gangland member". Sherburne voluntarily and

12.

intentionally assumed a primary role in the criminal enterprise that was being operated by Parker. He cannot now utilize a claim of duress to absolve himself from criminal liability. *State v. Robinson*, 132 Ohio App. 3d 830, 836 (1st Dist. 1999).

## Conclusion

{¶ 39} We find Sherburne's assignment of error not well-taken and we affirm the judgment of the Erie County Court of Common Pleas. The costs of this appeal are assessed to appellant pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.

Thomas J. Osowik, P.J.
_____
JUDGE

Gene A. Zmuda, J.
_____
JUDGE

Charles E. Sulek, J.
CONCUR.
_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.